186 So. 129

### GOODE, Com'r of Agriculture and Industries, et al. v. TYLER.

3 Div. 280.

Supreme Court of Alabama.

Jan. 19, 1939.

A. A. Carmichael, Atty. Gen., Chas. M. Pinkston, Asst. Atty. Gen., and Jack Crenshaw, of Montgomery, for appellants.

Horace C. Wilkinson and Ben. F. Smith, both of Birmingham, for appellee.

**GARDNER, Justice.**

The State Board of Agriculture and Industries unanimously adopted the following resolution: "That the Board does hereby authorize the Commissioner to proceed with the establishment of a Concentration Produce Market within the State of Alabama, and to expend such sums as may be necessary for said purpose, not to exceed $125,000."

Pursuant to this resolution the Commissioner of Agriculture and Industries, was in process of establishing such a market in Birmingham at an expenditure of $150,000

or $174,000, which includes an expected forty-five per cent. federal grant. With this money a lot was to be purchased and a building erected thereon with rental spaces for farmers who bring their produce for grading, standardization and storage awaiting shipment when sold. Upon completion the operating cost is estimated at $15,000 per year, which is expected to be realized from the rentals to farmers and inspection fees imposed. The initial outlay for the purchase of the lot and erection of the building is to be paid out of the agricultural fund, as defined in section 484 of the Agricultural Code of 1927, as amended by General Acts 1935, pages 12, 23, § 24.

The Agricultural Code of 1927 not only contains provision for fees and stamp taxes of numerous kinds but also annual license taxes for conducting certain businesses therein enumerated.

Complainant is a taxpayer of Jefferson County, and pays also whatever tax is imposed on feed and fertilizer, and as such taxpayer filed this bill seeking injunctive relief against the expenditure of these public funds for the purpose above noted as without authority of law.

Upon submission of the cause on oral proof and by agreement affidavit of the Commissioner, the chancellor granted the relief prayed and that the injunction issue. From this decree the Commissioner has appealed.

█ It is first objected that complainant is without right to institute this suit. Notwithstanding sharp conflict in the authorities generally, this Court is committed to the doctrine that a taxpayer may maintain a suit in equity to restrain a state officer in the unlawful disbursement of state funds. Turnipseed v. Blan, 226 Ala. 549, 148 So. 116; Hall v. Blan, 227 Ala. 64, 148 So. 601, and authorities therein cited.

Defendants insist this principle is here inapplicable as the agricultural fund does not contain taxes in the general sense and as derived from a general revenue bill.

█ But we think the argument too greatly restricts the right of a taxpayer to maintain such a suit. As we have observed complainant pays general taxes as well as some of the very taxes imposed by the Agricultural Code, and this code not only provides for fees and stamp taxes and the like, but license taxes also. In a very broad sense these are forms of taxation (37 Corpus Juris 168, 169; 61 Corpus Juris 65 and 107) sufficient in the instant case to

justify the maintenance of this suit by this complainant. Nor do we see any element of bad faith involved in its institution. True complainant is a member of the Jefferson Truck Growers Association, which he no doubt considers will be injuriously affected by the establishment of this market by the State authorities; yet this but demonstrates his added interest, and in no manner affects the good faith of the proceedings.

█ We are therefore brought to a consideration of the merits of the case. And in this connection, the first inquiry is whether or not there is statutory authority for what is proposed in regard to the concentration market. To justify this expenditure of the fund the defendants must of course be able to point to some authority therefor in the law, and this authority must be given either directly or by necessary implication. 46 Corpus Juris 1018, 1034. Legislative intent must of course control, but there are authorities to the effect that there is a presumption against legislation by implication. 59 Corpus Juris 1011. This is the meaning of the decisions holding that such authority must appear either directly or by necessary implication.

It is not pretended there is here any direct authority for this venture found in the Agricultural Code or any amendment thereto. Reference is made to numerous sections of the Agricultural Code (sections 23, 334, 335, 336, 484 and 488). Some stress is laid upon section 488 as amended by General Acts of 1935, page 24, § 26, as follows: "The Commissioner of Agriculture and Industries, with the approval of the State Board of Agriculture, shall use the Agricultural Fund in accordance with the provisions of law for the support and expense of regulatory, control and administrative work of the Agricultural Section of the Department and in such manner as said Board deems will best effect the purposes of all laws included in said Agricultural Section."

The "regulatory control and administrative work," are defined by section 23 of the Agriculture Code, which reads as follows: "Regulatory control and administrative work for the purposes of this plan has reference to the administration of laws and regulations, rendering service pertaining thereto and performing other executive functions of the state pertaining to agriculture. Typical of this line of work is livestock sanitation, including quarantines

and control of outbreaks of disease; plant disease and regulation, including orchard and nursery inspection and control of outbreaks; dairy and food control, and inspection of seed, feed, fertilizer, and other products; conservation of natural resources; adoption of standard grades for agricultural products and containers. thereof; conducting fact-gathering studies of existing conditions as to supplies, production, market conditions, costs of services, prices, complaints, etc., for the purpose of acquiring and disseminating information which is essential to law enforcement or administration; and presentation to the public of the control, regulative and administrative problems which this function is to promote and for which it is to be responsible."

■■ It therefore appears that this general language of section 488, as amended, has direct reference to section 23, wherein this very work is more minutely defined, and it is to this work that the amended section 488 has reference and must be considered in relation thereto. 59 Corpus Juris 980. It is but the application of the doctrine ejusdem generis, "where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated." 59 Corpus Juris 981; O'Neal v. Turner, 230 Ala. 24, 158 So. 801; Louis Pizitz Dry Goods Co. v. Fidelity & Deposit Co., 223 Ala. 385, 136 So. 800; Nettles v. Lichtman, 228 Ala. 52, 152 So. 450, 91 A.L.R. 1455.

■ It is clear enough these provisions furnish no foundation for such an expenditure. Nor do sections 334, 335 and 336 of the Agricultural Code add any strength to the theory of the grant of any such authority. They relate to marketing and rules and regulations relating thereto. The definition for "marketing" found in section 335 is for the public information, that one may know what is included in that term and can have no bearing here. The following section (336). enumerates certain powers and duties of the Commissioner. He must make certain investigations, acquire and disseminate certain data and statistics and market prices, publish information as to transportation and co-operate with the Public Service Commission in that regard. He must exercise regulatory powers in maintaining economic and efficient systems of storage, distribution and marketing, and in reaching advantageous markets, and numerous other duties not necessary here to further note. But in none of them is there any indication that he is to set up and establish such a concentration market as here proposed.

Certainly had the lawmaking body had in mind any such authority, it would have been a mere matter of a few words to so express the thought. Having gone to the pains of enumerating these various duties, the language, we think, is properly to be construed as excluding the project here involved (59 Corpus Juris 984), which in no manner is indicated by any language in the Act as necessary to the proper performance of any of the enumerated duties.

As to the grain inspection, we note that in section 323 of the Act express provision is made therefor as by the establishment of "official stations" for that purpose, thus indicating to some extent that had the establishment of "concentration markets" been in the legislative mind, some like expression would have appeared.

■ We entertain no doubt that the members of the board as well as the Commissioner are well convinced and conscientiously believe that the establishment of such a market is a forward step for the good of the agricultural interest of the State. But with all of this, the courts are not concerned. We have but to construe the Act as it is written and express the legislative intent as we find it, and in so doing care must be exercised that no infringement be made upon the functions of the lawmaking body. But we deem further discussion unnecessary.

For the authority for this expenditure defendants rely upon language of a most general character, and which, in our opinion, falls far short of showing by necessary implication that such was the legislative intent.

■ Having no legislative authority, the expenditure of the funds is properly enjoined. This conclusion renders unnecessary a consideration of the argument relative to section 93 of our Constitution. It will be time enough to consider any such question if and when the legislature authorizes the expenditure of such fund for such purpose.

It results. that, in our opinion, the chancellor correctly ruled, and the decree rendered will accordingly be here affirmed.

Affirmed.

THOMAS, BOULDIN, and FOSTER, JJ., concur.