721 So.2d 678 (1998)
Gerald KNUTSON et al.
v.
David G. BRONNER, individually and as chief executive officer of the Retirement Systems of Alabama.
David G. BRONNER, individually and as chief executive officer of the Retirement Systems of Alabama
v.
Gerald KNUTSON et al.
1951233, 1951355.
Supreme Court of Alabama.
July 24, 1998.
George C. Douglas, Jr., Birmingham, for appellants/cross appellees Gerald Knutson et al.
William T. Stephens, general counsel, and William F. Kelley, Jr., associate counsel, Retirement Systems of Alabama, for appellee/cross appellant David G. Bronner, individually and as chief executive officer of the Retirement Systems of Alabama.
PER CURIAM.
The main issue presented by these appeals is whether citizen taxpayers and a political committee have standing to sue the chief executive officer of the Retirement Systems of Alabama ("RSA") for an alleged misuse of RSA funds to encourage RSA members living in Montgomery County to vote in a local referendum to increase taxes. That depends on whether funds of the RSA are "state funds."

*679 Facts

Two individuals, Gerald Knutson and Terry Smith, as citizens and taxpayers of the State of Alabama; and a political committee, the Taxpayers' Defense Force, sued David Bronner, the chief executive officer of the RSA. They sought to recover what they alleged were "state funds" that they claimed Bronner had expended in violation of § 17-1-7, Ala.Code 1975.[1] In their complaint, the plaintiffs asked the trial court to order Bronner to reimburse the RSA approximately $6,000 and to enjoin him permanently from engaging in any future political activity in violation of § 17-1-7. Bronner counterclaimed, seeking to recover from the plaintiffs a fine provided by § 17-22A-22, Ala. Code 1975, for an alleged violation of the Fair Campaign Practices Act. The trial court entered a summary judgment in favor of Bronner on the plaintiffs' claims, holding that the plaintiffs did not have standing to challenge the expenditure of RSA funds, but also entered a summary judgment in favor of the plaintiffs on Bronner's counterclaim, on the ground that the court did not have jurisdiction to enforce a criminal fine in a civil lawsuit. Because we hold that the plaintiffs did not have standing in this case, and because we hold that Bronner may not in a civil action enforce a statute assessing a criminal fine, we affirm both the summary judgments.
Bronner distributed a memorandum on RSA stationery in June 1994, over his signature as chief executive officer of the RSA, in which he urged RSA members living in Montgomery County to vote, in a local referendum, in favor of increasing ad valorem taxes for the support of public education. It is undisputed that RSA employees copied the memorandum and mailed it to RSA members and in doing so used postage purchased by the RSA.
Bronner's counterclaim alleged that, on June 17, 1994, the Taxpayers Defense Force received a $15,000 contribution for the express purpose of campaigning against the ad valorem tax increase, and that the Taxpayers Defense Force had not filed a statement of organization of a political committee, as required by the Fair Campaign Practices Act. See § 17-22A-5, Ala.Code 1975.[2] Because they had not filed the reports required by law, Bronner asserted that the plaintiffs were liable for the statutory fine imposed by § 17-22A-22, and, that, under § 6-5-50, he was entitled to recover the statutory penalty on behalf of the State.

Do the Plaintiffs Have Standing?
We first discuss whether the plaintiffs have standing to sue. The plaintiffs' main argument is that RSA funds are "state funds" and that they, therefore, have standing to prevent the illegal expenditure of those funds. Bronner counters that RSA funds are not "state funds," as that phrase has been used in our cases dealing with taxpayer standing. Bronner points out that neither of the individual plaintiffs nor the political committee is a member of the RSA with a vested interest in RSA funds, and he thus argues they have no cognizable interest sufficient to authorize them to sue.
*680 The plaintiffs rely on Lee v. Bronner, 404 So.2d 627 (Ala.1987), to support their argument that they have standing to sue. In Lee, this Court held that a member of the RSA, who had a direct pecuniary interest in RSA funds, had standing to sue. This Court also noted in that case that a taxpayer's standing is broad and that taxpayers are often the only persons who can bring a suit challenging the expenditure of state funds. Id. at 628-29. In Lee, however, this Court did not have to reach the specific issue presented here  whether a taxpayer who is not a member of the RSA has standing to bring an action against the chief executive officer of the RSA.
The plaintiffs also rely on Hunt v. Windom, 604 So.2d 395 (Ala.1992), in support of their argument on the standing question. In Hunt, "[t]he plaintiff, Ralph Windom, as a citizen and taxpayer of the State of Alabama, sued Governor Guy Hunt, alleging that he used state funds and resources to maintain a ministry and that his doing so violated the Constitution of Alabama." Id. at 395. In that case, this Court, relying on Zeigler v. Baker, 344 So.2d 761, 763 (Ala.1977), reaffirmed its long line of cases regarding taxpayer standing, and held that the taxpayer had standing.[3]
To determine whether a taxpayer has standing, under the standard set out in Zeigler and in Goode v. Tyler, 237 Ala. 106, 186 So. 129 (1939) (cited in note 3), we first must determine whether the expenditures challenged in this case were from "state funds," as they clearly were in both of those cases. If RSA funds are not "state funds" within the meaning of Alabama's Constitution and statutes, then the principles of law applied in Zeigler and Goode v. Tyler would not apply here.
The plaintiffs claim that the funds in question are state funds because, they say, §§ 36-27-2(b) and 16-25-2(b) describe the RSA as an "instrumentalit[y] of the state funded by the state," and because that phrase is included in clauses that grant the RSA and its officers the same immunity the state and its officers have. The plaintiffs also rely upon the fact that employees of the RSA are state employees eligible for state retirement benefits.
The argument of the plaintiffs is a plausible one, but we believe we cannot look only to the cases of this Court where the nature of the funds involved was clear; we must also examine the constitutional provisions that govern the RSA and the funds held by the RSA, to determine the character of those funds. We begin by looking at the constitutional provision that governs the management, investment, and distribution of RSA funds.
In Amendment 472 of the Alabama Constitution of 1901, the people provided the following:

"All of the assets, proceeds or income of the teachers', employees', state police, public and judicial retirement systems of Alabama, or any successor systems thereto, and all contributions and payments made to such systems to provide for retirement and related benefits thereunder, shall be held, invested as authorized by law, or disbursed as in trust for the exclusive purpose of providing for such benefits, refunds and administrative expenses under the management of the boards of control of the aforementioned retirement systems; and, none of such assets, proceeds, income, contributions or payments shall be used, loaned, encumbered or diverted to or for any other purpose whatsoever." *681 (Emphasis added.) Examining Amendment 472, we note that the people specifically provided that RSA assets and income are "held... in trust ... under the management of the boards of control." We also note that the statutes creating the RSA and setting out its powers, which pre-date Amendment 427, provide that the RSA is a public corporation with a fiduciary duty to hold and invest its assets in trust for its members.[4]
Although it might appear that the main question in this case  whether funds held by the RSA are "state funds"  was decided adversely to Bronner by this Court in Lee, the plaintiffs' reliance on Lee is misplaced, because the plaintiff in Lee had standing as a potential beneficiary of the trust. Goode v. Tyler is also distinguishable. A comparison of Goode with this present case helps to clarify the principal reason the plaintiffs in this case do not have standing. In Goode, a taxpayer sued, alleging that the commissioner of agriculture and industries had expended funds from the Agriculture Fund that were not authorized by law. The Agriculture Fund was established by Article 37 of the Agricultural Code of Alabama of 1927. Expenditures from the Agriculture Fund were under the control of the State Board of Agriculture. Agr.Code 1927, § 488. The Agriculture Fund was created by the Legislature for the sole purpose of paying for the "expenses of the regulatory control and administrative work of the Agricultural Section of the Department of Agriculture and Industries." Agr.Code 1927, § 487. In Goode, this Court recognized the standing of a taxpayer to challenge certain expenditures from the Agriculture Fund that had been authorized by the State Board of Agriculture.
Goode, however, presented a factual situation that is fundamentally distinct from that of the present case. In Goode, the Agriculture Fund was established by the Legislature, it existed at the will of the Legislature, and it was to be used for legislatively determined purposes, in accordance with procedures established by legislation. Agr.Code 1927, § 484 et seq. It follows, therefore, that the Legislature could have determined that, for whatever reason, it no longer wished for the Agriculture Fund to exist and it then could have terminated that fund through legislation. Here, the people, through their constitution, Amendment 472, have placed the funds of the RSA in trust; because of that constitutional provision, we hold that the funds in question in this case are not "state funds" as this Court has used that phrase in its earlier cases.
We hold that the people, in ratifying Amendment 472, intended that the assets of the RSA, which the record shows do not all come from the State but from many sources, including contributions from employers other than the State, interest income, and earnings on investments, are not "state funds" as that term is used in our taxpayer-standing cases and within the meaning of § 17-1-7, because the constitution provides that these funds are to be held, invested, and disbursed solely for the benefit of the members of the RSA.
In reaching this conclusion, it is not necessary for us to determine the outer limits of the Legislature's powers relating to these trust funds. Clearly, the Legislature has certain powers to regulate the administration of the funds, so long as the regulation does *682 not conflict with Amendment 472. We need not address what the Legislature can and cannot do. We merely hold that, for the purposes of this action, the plaintiffs, under current law, do not have standing,[5] because the funds involved are not "state funds" to the extent that a non-RSA member taxpayer would have standing to challenge their use.[6]

Bronner's Counterclaim
In his counterclaim, Bronner asserts that § 6-5-50, Ala.Code 1975, authorizes him to enforce a criminal fine against Knutson for failure to file a campaign report, in violation of the Fair Campaign Practices Act, § 17-22A-22. Section 6-5-50 provides:
"When a penalty is imposed by a statute which does not provide a mode for the recovery, any citizen may commence an action for the same on behalf of himself and the county in which the penalty is incurred."
(Emphasis added.) Section 17-22A-22(b) provides for the imposition of a fine of $1,000 or more for failure to file a statement of organization of a political committee. Section 17-22A-22(c) expressly provides that the attorney general, not a private party, is to bring a prosecution for violations of Title 17, Chapter 22A (the Fair Campaign Practices Act). Accordingly, § 6-5-50 does not authorize Bronner to recover a fine in this case.

Conclusion
Based on all of the foregoing reasons, the summary judgments are affirmed.
AFFIRMED.
HOOPER, C.J., and MADDOX, ALMON, SHORES, HOUSTON, and LYONS, JJ., concur.
KENNEDY, J., concurs specially.
COOK, J., concurs in the result.
SEE, J., concurs in part and dissents in part.
KENNEDY, Justice (concurring specially).
I agree that the funds in the Retirement Systems of Alabama ("RSA") are not "state funds."
It is clear from Amendment No. 472, Ala. Const.1901, that the state has no ownership of, or control over, funds held by the RSA. These funds are held in trust by the RSA for its members, for the payment of benefits promised, and they belong to those members. State employees have vested property rights created by § 16-25-2 and § 36-27-2, Ala. Code 1975, and the state cannot constitutionally impair or diminish those property rights. Under no circumstances can these funds revert to the state or be diverted by the Governor or the Legislature to fund other costs of state government.
Moneys earned by public employees and contributed to a public employees' retirement plan, including the employers' contribution, which has been earned by the public employees, become part of the corpus of the trust and, thereafter, cannot be used for any purpose other than that for which the moneys were entrusted. Once funds are paid into the RSA by the state, these funds lose their identity as state funds and become trust funds. See, e.g., West Virginia Trust Fund, Inc. v. Bailey, 199 W.Va. 463, 485 S.E.2d 407 *683 (1997); McCall v. State, 219 A.D.2d 136, 640 N.Y.S.2d 347 (1996).
The Teachers' Retirement System and the Employees' Retirement System were established by statutes that gave them the powers of public corporations, to invest and administer the funds and to hold them in trust for the payment of retirement benefits. See §§ 16-25-2 and 36-27-2, Ala.Code 1975, respectively. Under Alabama law, a public corporation is an entity separate from the state, and funds of public corporations are not state funds. See McBurney v. Ruth, 527 So.2d 1265 (Ala.1988); Thomas v. Alabama Mun. Elec. Auth., 432 So.2d 470 (Ala.1983); Alabama Hosp. Ass'n v. Dillard, 388 So.2d 903 (Ala.1980).
Accordingly, the funds in the RSA are not "state funds," and the expenditure of those funds cannot be challenged by the plaintiffs, who are neither participants in, nor beneficiaries of, the retirement systems.[7]
SEE, Justice (concurring in part and dissenting in part).
Although I concur with the majority's conclusion that the criminal fine asserted by Dr. Bronner cannot be enforced in this civil action, I must respectfully dissent from the majority's holding that Gerald Knutson and Terry Smith do not have taxpayer standing under Alabama law to challenge the expenditure for political purposes of the funds of the Retirement Systems of Alabama ("RSA").
Until today, this Court has embraced a broad concept of taxpayer standing. Under Goode v. Tyler, 237 Ala. 106, 109, 186 So. 129, 131 (1939), Alabama taxpayers had broad standing to challenge the expenditure of state funds if they had, in a small part, been the source of those funds. Alabama's taxpayer-standing doctrine did not require that the plaintiff show a personal injury distinct from that of other taxpayers. Zeigler v. Baker, 344 So.2d 761, 763 (Ala.1977). In Zeigler, 344 So.2d at 763-64, this Court stated:
"In a long line of decisions this Court has recognized the right of a taxpayer to challenge, either as unconstitutional or as not conforming to statute, the expenditure of public funds by county officers.... The right of a taxpayer to challenge the unlawful disbursement of state funds likewise is unquestioned. Goode v. Tyler, 237 Ala. 106[, 109], 186 So. 129[, 131] (1939) (`... this Court is committed to the doctrine that a taxpayer may maintain a suit in equity to restrain a state officer in the unlawful disbursement of state funds').... The Supreme Court of Illinois wrote to this principle in Fergus v. Russel, 270 Ill. 304, 110 N.E. 130 (1915):
"`We have repeatedly held that taxpayers may resort to a court of equity to prevent the misapplication of public funds, and that this right is based upon the taxpayer's equitable ownership of such funds and their liability to replenish the public treasury for the deficiency which would be caused by the misappropriation.'"
(Emphasis in original.) The majority today substantially narrows this rule of taxpayer standing.
As the majority points out, Amendment No. 472 to the Constitution of Alabama of 1901 provides:
"All of the assets, proceeds or income of the teachers', employees', state police, public and judicial retirement systems of Alabama, or any successor systems thereto, and all contributions and payments made to such systems to provide for retirement and related benefits thereunder, shall be held, invested as authorized by law, or disbursed as in trust for the exclusive purpose of providing for such benefits, refunds and administrative expenses under the management of the boards of control of the aforementioned retirement systems; and, none of such assets, proceeds, income, contributions or payments shall be used, loaned, encumbered or diverted to or for any other purpose whatsoever."
(Emphasis added.) Tax revenues, in the form of state government contributions,[8] are *684 paid into the RSA for the "exclusive purpose" of funding RSA member benefits and paying administrative expenses. Still, the majority holds that there is no taxpayer standing.
The majority attempts to distinguish Goode, stating that the fund there was controlled by a statute, not by a constitutional amendment. 721 So.2d at 678. Yet, it is not the status of the legal provision governing the fund, but the function of that provision, that is at issue in this case. We do not face a question of whether Amendment No. 472 is of greater constitutional moment than the statute in Goode. Instead, we face a question of whether the function of Amendment No. 472  to confine expenditures from a fund to certain exclusive purposes  is different from the function of the statute in Goode.
In Goode, 237 Ala. at 109, 186 So. at 131, as in this case, tax revenues were paid into a fund the expenditures from which were exclusively dedicated to certain purposes. The Agricultural Code mandated that the fund be "expended exclusively for the expenses of the regulatory control and administrative work of the Agricultural Section of the Department of Agriculture and Industries as that work is defined in said declaration of said field of work." Ala. Agr.Code 1927, § 487, as amended by Act No. 13, Ala. Acts 1935, p. 24 (emphasis added). In Goode, 237 Ala. at 108, 186 So. at 130, as in this case, the official entity responsible for expenditures from the fund adopted a resolution approving the expenditures challenged by the taxpayer. Thus, in Goode, as in this case, tax revenues, once paid into the fund, were legally dedicated to and officially approved for a specific use.
In Goode, id. at 109, 186 So. at 131, unlike this case, however, this Court held that, because the plaintiff taxpayer had been, in part, the source of the revenues paid into the fund, he had taxpayer standing to bring an action challenging certain expenditures from the fund.[9] The holding in Goode would have been no different had it been a constitutional amendment, instead of a statute, that governed the fund and provided the "exclusive purpose" for which expenditures could be made. It was the source of the fund  tax revenues  that was controlling. Id. at 109, 186 So. at 131. Today, the majority effectively abandons the holding of Goode and narrows Alabama's doctrine of taxpayer standing.
As a matter of policy, I am not unsympathetic to the change in the doctrine of taxpayer standing effected by the majority. A broad doctrine of taxpayer standing empowers the Judiciary to oversee constitutional compliance by the other branches of government. See, e.g., Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968) (holding that taxpayers had standing to challenge the Government's subsidy to parochial schools on Establishment Clause grounds). A narrow doctrine of taxpayer standing, however, inhibits judicial encroachment on the provinces of the other branches of government by confining the Judiciary's role to that of deciding cases and controversies involving particularized and concrete injuries.[10] See, e.g., United *685 States v. Richardson, 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974) (holding that a taxpayer lacked standing to challenge, under the Statement and Account Clause of Article I, § 9, the secrecy of the Central Intelligence Agency's budget); Schlesinger v. Reservists Committee to Stop the War, 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974) (holding that taxpayers lacked standing to challenge, under the Incompatibility Clause of Article I, § 6, the practice of members of Congress serving in the military reserves).[11] Although I am receptive to aspects of a narrow taxpayer-standing doctrine, my concern for the judicial doctrine of stare decisis prevents me from concurring with the majority's change in Alabama law in the case before us.
NOTES
[1] That section provides, in relevant part:

"(b) No person shall attempt to use his or her official authority or position for the purpose of influencing the vote or political action of any person. Any person who violates this subsection (b) shall be guilty of a felony and punishable by a fine not to exceed ten thousand dollars ($10,000) or imprisonment in the state penitentiary for a period not to exceed two years, or both.
"(c) No person in the employment of the State of Alabama, a county, or a city whether classified or unclassified, shall use any state, county, or city funds, property or time, for any political activities. Any person who is in the employment of the State of Alabama, a county, or a city shall be on approved leave to engage in political action or the person shall be on personal time before or after work and on holidays. It shall be unlawful for any officer or employee to solicit any type of political campaign contributions from other employees who work for the officer or employee in a subordinate capacity. It shall also be unlawful for any officer or employee to coerce or attempt to coerce any subordinate employee to work in any capacity in any political campaign or cause. Any person who violates this section shall be guilty of the crime of trading in public office and upon conviction thereof, shall be fined or sentenced, or both, as provided by Section 13A-10-63."
[2] On June 30, 1994, the Taxpayers Defense Force filed with the secretary of state a statement of dissolution of the political committee and a summary of contributions and expenses.
[3] We note that the federal courts narrowly construe taxpayer standing to require a distinct injury to the plaintiff, see, e.g., Schlesinger v. Reservists Committee to Stop the War, 418 U.S. 208, 220, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974), but this Court, as the plaintiffs claim here, has recognized a broader concept of taxpayer standing. In Zeigler, this Court wrote:

"In a long line of decisions this Court has recognized the right of a taxpayer to challenge, either as unconstitutional or as not conforming to statute, the expenditure of public funds by county officers.... The right of a taxpayer to challenge the unlawful disbursement of state funds likewise is unquestioned. Goode v. Tyler, 237 Ala. 106[, 109], 186 So. 129[, 131] (1939) (`... this Court is committed to the doctrine that a taxpayer may maintain a suit in equity to restrain a state officer in the unlawful disbursement of state funds')...."
344 So.2d at 763-64 (emphasis original).
[4] Section 36-27-2, Ala.Code 1975, provides:

"(a) A retirement system is hereby established as a body corporate and placed under the management of the board of control for the purpose of providing retirement allowances and other benefits under the provisions of this article for employees of the state of Alabama. The retirement system so created shall be established as of October 1, 1945. It shall have the power and privileges of a corporation and shall be known as the `employees' retirement system of Alabama,' and by such name all of its business shall be transacted, all of its funds invested and all of its cash and securities and other property held in trust for the purpose for which received.
"(b) Any provision of law to the contrary notwithstanding, the boards of control of the teachers' retirement system of Alabama and the employees' retirement system of Alabama shall have vested in them all powers necessary to fulfill their fiduciary duty as trustees to members of each respective system including the power to sue and be sued, complain and defend in their own names; provided, however, that as instrumentalities of the state funded by the state, the retirement systems, their officers, and employees shall be immune from suit to the same extent as the state, its agencies, officers, and employees."
See also, e.g., § 16-25-2, Ala.Code 1975.
[5] By stating our conclusion that current law does not allow the taxpayer plaintiffs to challenge Bronner's expenditures, we express no opinion on the extent to which the conduct of the RSA's chief executive officer could or should be restricted, either by the boards of control or by more specific acts of the legislature, on matters deemed to be political matters rather than matters relating to the administration of the retirement systems.
[6] There might be cases in which a taxpayer's standing is recognized because no one else may bring the action. See Zeigler v. Baker, 344 So.2d 761 (Ala.1977), where this Court, as part of its rationale for finding taxpayer standing, acknowledged the "significance" of the following statement:

"`If a taxpayer does not launch an assault, it is not likely that there will be an attack from any other source, because the agency involved is usually in accord with the expenditure.'"
344 So.2d at 764, quoting Department of Administration v. Horne, 269 So.2d 659 (Fla.1972). Those facts are not present here, because any member of the RSA, and the RSA has many members, could have sued and alleged a violation of the provisions of Amendment 472 and the statutes governing the RSA.
[7] Of course, Bronner and the boards of control are subject to being sued by an RSA participant or beneficiary for misappropriating or mismanaging the funds.
[8] Tax revenues provide a substantial and continuing source of funds for the RSA through employer (i.e., state) contributions. See Ala. Code 1975, § 16-25-21 (requiring employer contributions, which are tax revenues, to be paid to the RSA for teachers' retirement funds); § 36-27-24 (requiring employer contributions, which are tax revenues, to be paid to the RSA for state employees' retirement funds).
[9] Counsel for Dr. Bronner cites McBurney v. Ruth, 527 So.2d 1265 (Ala.1988), for the proposition that like a public corporation, the RSA is separate and independent from the State and that its funds are not state funds. This argument misconstrues the long-established general rule set out in Edmonson v. State Industrial Development Authority, 279 Ala. 206, 184 So.2d 115 (1966). Edmonson, id. at 210, 184 So.2d at 119, provides that an obligation is not made a state debt because of the fact that it is payable by a public corporation established by the State. Instead, an obligation is a state debt if the source of the funds to pay the obligation is a state tax previously payable into the state's general fund. Id. at 211, 184 So.2d at 120. Accord Opinion of the Justices No. 346, 665 So.2d 1357, 1364-65 (Ala.1995) (Kennedy, J., concurring specially) (stating that "funding is the issue here" and concluding that under Edmonson payments from a special fund created a state debt because the payments had "heretofore been paid into the general fund of the state").
[10] Professor Chemerinsky has described the implications of a broad and a narrow doctrine of taxpayer standing with respect to the federal Judiciary as follows:

(Footnote cont'd.)
"Ultimately, what is at stake is two competing visions of the role of the federal judiciary. Under one, the role of federal courts is limited to remedying specific injuries suffered by individuals. This position sees a need for great deference to the political branches of government and fears the powers of the court as an antimajoritarian institution.
"An alternative view sees the federal judiciary as existing to ensure government compliance with the Constitution. Under this position, judicial deference does not include tolerating constitutional violations."
Erwin Chemerinsky, Federal Jurisdiction 84 (1989).
[11] The Supreme Court of the United States has generally embraced a narrow doctrine of taxpayer standing that leaves numerous decisions to the political processes of the executive and legislative branches of government. See Richardson, 418 U.S. at 179, 94 S.Ct. 2940 ("In a very real sense, the absence of any particular individual or class to litigate these claims gives support to the argument that the subject matter is committed to the surveillance of Congress, and ultimately to the political process."); Schlesinger, 418 U.S. at 227, 94 S.Ct. 2925 ("Our system of government leaves many crucial decisions to the political processes[, and t]he assumption that if [the taxpayers] have no standing to sue, no one would have standing, is not a reason to find standing.").