The plaintiffs below, Robert A. Beckerle and 10 other citizens of the State of Alabama (hereinafter "the taxpayers"), appeal from an order of the Montgomery Circuit Court granting a motion to dismiss filed by the defendant, Roy S. Moore. We affirm.
 I. Facts and Procedure
This appeal is from the dismissal of a complaint filed in the aftermath of litigation involving Roy S. Moore, the former Chief Justice of the Supreme Court of Alabama. On July 31, 2001, Moore, relying upon his authority as the administrative head of Alabama's judicial system,[1] installed in the rotunda of the Alabama Judicial Building[2] a granite monument depicting in a place of prominence the Ten Commandments. Shortly after the monument was installed, two actions were filed in the United States District Court for the Middle District of Alabama against Moore in his official capacity as Chief Justice. The plaintiffs in those actions, three attorneys licensed to practice law in the State of Alabama, sought injunctions requiring *Page 186 
the removal of the monument, as well as attorney fees and costs. The two actions were consolidated, and the plaintiffs prevailed in the district court on their request for injunctive relief; a panel of the United States Court of Appeals for the Eleventh Circuit unanimously affirmed the judgment of the district court, and the United States Supreme Court denied certiorari review. SeeGlassroth v. Moore, 229 F.Supp.2d 1290 (M.D.Ala. 2002), aff'd,335 F.3d 1282 (11th Cir. 2003), cert. denied, 540 U.S. 1000,124 S.Ct. 497, 157 L.Ed.2d 404 (2003). The monument was ultimately removed from the Judicial Building, and Moore was removed from office by the Court of the Judiciary after proceedings stemming from his failure to comply with the district court's order to remove the monument. The decision of the Court of the Judiciary was affirmed by a Special Supreme Court. See Moore v. JudicialInquiry Comm'n, 891 So.2d 848 (Ala. 2004).
The plaintiffs in the monument litigation based their claim on42 U.S.C. § 1983. Congress has authorized the recovery of attorney fees and costs by the prevailing parties in such actions. See 42 U.S.C. § 1988. The plaintiffs in the monument litigation, as prevailing parties in an action against a state official sued in his official capacity, claimed attorney fees and costs from the State of Alabama under 42 U.S.C. § 1988.[3]
The State settled the plaintiffs' claims for the attorney fees and costs by agreeing to pay the sum of $549,430.53. That payment forms the basis of the taxpayers' litigation.
The taxpayers filed an action in the Montgomery Circuit Court on April 30, 2004, requesting that Moore be ordered to repay the State of Alabama the costs incurred as a result of what they say were Moore's "self-serving and heedless actions." They claimed that Moore, during the monument litigation, made statements and arguments that were "calculated to result in his losing the case [and that] he and his counsel failed and refused to assert the only feasible defense available, [i.e.,] that the monolith was a historic, not religious, installation."
Pursuant to Rule 12(b)(6), Ala. R. Civ. P., Moore filed a motion to dismiss the taxpayers' complaint, arguing that the taxpayers did not have standing to sue for the requested relief. The trial court granted that motion, and the taxpayers appealed.
 II. Standard of Review
In Nance v. Matthews, 622 So.2d 297, 299 (Ala. 1993), this Court set forth the standard of review applicable to an order granting a motion to dismiss: *Page 187 
 "The appropriate standard of review under Rule 12(b)(6)[, Ala. R. Civ. P.,] is whether, when the allegations of the complaint are viewed most strongly in the pleader's favor, it appears that the pleader could prove any set of circumstances that would entitle her to relief. Raley v. Citibanc of Alabama/Andalusia, 474 So.2d 640, 641 (Ala. 1985); Hill v. Falletta, 589 So.2d 746 (Ala.Civ.App. 1991). In making this determination, this Court does not consider whether the plaintiff will ultimately prevail, but only whether she may possibly prevail. Fontenot v. Bramlett, 470 So.2d 669, 671 (Ala. 1985); Rice v. United Ins. Co. of America, 465 So.2d 1100, 1101 (Ala. 1984). We note that a Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief."
 III. Analysis
Moore argues that the taxpayers do not have standing to seek the requested relief. He points out that, in their complaint, the taxpayers cite § 6-5-4, Ala. Code 1975, which provides in subsection (a):
 "(a) The Governor may cause actions to be commenced for the recovery of any public moneys, funds or property of the state or of any county which have been lost by the neglect or default of any public officer, which have been wrongfully expended or disbursed by such officer, which have been wrongfully used by such officer or which have been wrongfully received from him."
(Emphasis added.) Moore argues that only the Governor can initiate an action under § 6-5-4, and he points out that the Governor did not order the filing of the instant action. The taxpayers, on the other hand, contend that, as Alabama taxpayers, they have the right to recover state funds wrongfully expended by, or caused to be wrongfully expended by, a public officer, and that, although § 6-5-4 provides a method for the recovery of wrongfully expended funds, it does not provide the exclusive
method for the recovery of wrongfully expended funds.
It is well settled that a taxpayer, in certain situations, has standing to challenge a proposed illegal expenditure by a state official. See Turnipseed v. Blan, 226 Ala. 549, 552,148 So. 116, 118 (1933) (recognizing "the right of a taxpayer to maintain a suit in equity to restrain an officer of a city or county
from disbursing funds without statutory authority or under an unconstitutional statute" and holding that the same right applies in the context of suits in equity against state officers (emphasis added)); Goode v. Tyler, 237 Ala. 106, 109,186 So. 129, 131 (1939) ("[T]his Court is committed to the doctrine that a taxpayer may maintain a suit in equity to restrain a stateofficer in the unlawful disbursement of state funds." (emphasis added)); Zeigler v. Baker, 344 So.2d 761 (Ala. 1977) (upholding an order of the trial court granting the taxpayer-plaintiff an injunction enjoining the comptroller, the finance director, and the treasurer of the State from making payments from public funds under the authority of an unconstitutional act).
The taxpayers argue that, in addition to a taxpayer's right to sue a state official to enjoin him or her from illegally expending public funds, this Court should recognize a taxpayer's right to recover funds that have been wrongfully expended. InPowers v. United States Fidelity Guaranty Co., 236 Ala. 389,391, 182 So. 758, 759 (1938), the Court, in framing the issue to be addressed in that case, stated:
 "The question thus presented is the right of [the plaintiff] as a citizen and *Page 188 
taxpayer to bring suit to recover [wrongfully expended] money for the State as a governmental unit, because of the failure of the State authorities to do so.
 "The argument is made that since the taxpayer may enjoin the payment of State funds when it is proposed to pay them on an unconstitutional act, he has the right, on certain conditions, to recover them after they are paid, or to sue the officer or his bondsmen for the official misconduct of his office in thus paying out the money."
The Court in Powers rejected the plaintiff's argument and thus refused to recognize a taxpayer's right to sue to recover funds expended by a state official under the authority of an unconstitutional act. In Doremus v. Business Council of AlabamaWorkers' Compensation Self-Insurers Fund, 686 So.2d 252 (Ala. 1996), this Court held that a taxpayer did not have standing to sue to collect taxes owed the State. In so holding, the Court cited with approval the holding in Powers:
 "`We do not think, however, that a citizen and taxpayer has the legal and constitutional right to assume the burden or privilege of enforcing an obligation due to the corporate State, and for its benefit.'"
686 So.2d at 253 (quoting Powers, 236 Ala. at 393,182 So. at 761) (emphasis added in Doremus).
The holdings in Powers and Doremus preclude the relief requested by the taxpayers. Their status as taxpayers is not sufficient to confer upon them standing to sue a state official to recover public funds allegedly wrongfully expended because of the acts of that official.
The taxpayers argue that Powers has been implicitly overruled, or, alternatively, that we should now expressly overrule it. In support of that argument, the taxpayers citeKnutson v. Bronner, 721 So.2d 678 (Ala. 1998). In Knutson, the taxpayers-plaintiffs sought to recover, from the chief executive officer of the Retirement Systems of Alabama, funds allegedly misused by that officer. Before holding that the plaintiffs lacked standing, the Court stated:
 "To determine whether a taxpayer has standing, under the standard set out in Zeigler [v. Baker, 344 So.2d 761 (Ala. 1977),] and Goode v. Tyler, 237 Ala. 106, 186 So. 129 (1939) . . ., we first must determine whether the expenditures challenged in this case were from `state funds,' as they clearly were in both of those cases. If [Retirement Systems of Alabama] funds are not `state funds' within the meaning of Alabama's Constitution and statutes, then the principles of law applied in Zeigler and Goode v. Tyler would not apply here."
721 So.2d at 680 (emphasis added). The Court in Knutson held that the funds involved in that case were not "state funds" and that the taxpayers therefore did not have standing to sue to recover the funds.
The taxpayers argue that, if the Court in Knutson had found that the funds involved in that case were "state funds," then the plaintiffs in that case would have had standing as taxpayers to sue for the recovery of those funds. Therefore, the taxpayers contend, the Court in Knutson impliedly overruled the holding in Powers to the contrary. However, the plaintiffs in Knutson
sued not only to recover moneys they claimed had been wrongfully expended, but also to "enjoin [the defendant] permanently from engaging in any future political activity in violation of § 17-1-7[, Ala. Code 1975]."[4] 721 So.2d at 679. Indeed, *Page 189 
"[t]he plaintiffs' main argument [was] that [Retirement Systems of Alabama] funds are `state funds' and that they, therefore, have standing to prevent the illegal expenditure of those funds." 721 So.2d at 679 (emphasis added). The Court's determination of whether the funds in question in Knutson were "state funds" was relevant to its ruling regarding the requested injunctive relief. And, regardless of the fact that the Court addressed the issue whether the funds involved were "state funds," the Court did not expressly address the issue whether a taxpayer has standing to sue to recover wrongfully expended state funds. Therefore, in their argument that Knutson subsilentio overruled Powers, the taxpayers read too much into the dicta of Knutson.
The taxpayers also cite Hunt v. Windom, 604 So.2d 395 (Ala. 1992), in support of their contention that Powers has been impliedly overruled. In Hunt, a taxpayer sued the Governor of Alabama, alleging that the Governor had "used state funds and resources to maintain a ministry and that his doing so violated the Constitution of Alabama 1901, specifically Article I, § 3."604 So.2d at 395. The trial court denied the Governor's motion to dismiss the action and, on an appeal by permission pursuant to Rule 5, Ala. R.App. P., this Court affirmed the trial court's order. The taxpayers argue that, because the plaintiff in Hunt
sued for, among other things, an "order requiring Governor Hunt to repay, return, or restore to the State of Alabama all taxpayers' monies and resources expended in violation of law,"604 So.2d at 395, and because the Court affirmed the trial court's order denying the Governor's motion to dismiss, the Court necessarily held that a taxpayer has standing to sue for the recovery of wrongfully expended state funds. However, the plaintiff in Hunt requested not only the return of funds, but also "a judgment declaring that certain actions by Hunt were beyond his authority as Governor of Alabama and violated Article I, § 3," and "injunctive and equitable relief." 604 So.2d at 395. In reviewing a ruling on a motion to dismiss, the procedural posture in which the Court decided Hunt, an appellate court views the allegations of the complaint most strongly in the pleader's favor, and if it appears that the pleader could proveany set of circumstances that would entitle her to relief, the motion to dismiss is properly denied. Nance v. Matthews,622 So.2d at 299. Because the plaintiff in Hunt requested injunctive and equitable relief, it appeared from the face of the plaintiff's complaint that he could have proved a set of circumstances that would have entitled him to relief, consistent with Powers. Therefore, Hunt does not conflict with Powers, and we decline to conclude that what is, at best, dicta inHunt, impliedly overruled Powers. Further, Hunt was decided in 1992, and four years later, in Doremus, the Court citedPowers with approval. Even more recently, in Henson v.HealthSouth Medical Center, Inc., 891 So.2d 863 (Ala. 2004), we cited the rule in Doremus and distinguished it, noting that the plaintiff in HealthSouth had disclaimed any interest in a monetary recovery and sought only declaratory relief.
 IV. Conclusion Powers and Doremus remain the law in this State, and they control the disposition of this case. We decline to overrule those cases. Accordingly, the taxpayers lack standing to sue for the recovery of the state funds expended as a result of Moore's actions. The trial court therefore *Page 190 
did not err in granting Moore's motion to dismiss.
AFFIRMED.
NABERS, C.J., and WOODALL, STUART, and SMITH, JJ., concur.
PARKER, J., recuses himself.
[1] See Ala. Const. 1901, Amend. No. 328, § 6.10.
[2] The Judicial Building houses the Court of Criminal Appeals of Alabama, the Court of Civil Appeals of Alabama, and the Supreme Court of Alabama, as well as the Alabama Administrative Office of Courts and the Alabama State Law Library.
[3] When a plaintiff prevails in an action filed under42 U.S.C. § 1983 against an official of the State of Alabama in his or her official capacity, the State's liability to the prevailing party for attorney fees and costs, under 42 U.S.C. § 1988, cannot be seriously questioned. This is so notwithstanding Art. I, § 14, Alabama Constitution of 1901, which provides that "the State of Alabama shall never be made a defendant in any court of law or equity." See State Bd. of Educ. v. Waldrop, 840 So.2d 893,902-03 (Ala. 2002) (Lyons, J., concurring specially) ("Under the Supremacy Clause of the United States Constitution (Art. VI), in tandem with the Fourteenth Amendment, the attorney fees permitted by 42 U.S.C. § 1988 are recoverable, notwithstanding a provision of a state constitution that might otherwise afford immunity to the party against whom the fees are sought." (citing Hensley v.Eckerhart, 461 U.S. 424, 446 n. 7, 103 S.Ct. 1933, 76 L.Ed.2d 40
(1983) ("Congress's imposition of liability for attorney's fees under § 1988 also represents a decision to abrogate the sovereign immunity of the States in order to accomplish the purposes of theFourteenth Amendment."), and Larkins v. Department of MentalHealth Mental Retardation, 806 So.2d 358, 363 (Ala. 2001) ("[T]he Fourteenth Amendment overrides the scheme of sovereignty of states as it existed at the time of the formation of the Union."))).
[4] Section 17-1-7 prohibits public officials from using their positions to influence the vote or political action of any person.