MAIN, Justice.
Sheila Mote Ingle ("Ingle") appeals from an order entered by the Walker Circuit Court dismissing her claims against Jason Frank Adkins, individually and in his capacity as superintendent of the Walker County School System; the Walker County Board of Education ("the Board"); and Bradley Glenn Ingle, William Edward Gilbert, Dennis Dale Reeves, James Lynn Rigsby, and Sonia Marie Waid, members of the Board (hereinafter collectively referred to as "the Board members") (Adkins, the Board, and the Board members are hereinafter referred to collectively as "the defendants").[1] We affirm in part, reverse in part, and remand.
Facts and Procedural History
On August 4, 2016, Ingle filed in the Walker Circuit Court a "verified petition for writ of mandamus or in the alternative for declaratory judgment" against Adkins in his individual and official capacities, the Board members in their individual and official capacities, and the Board.
According to Ingle's petition, Adkins was elected superintendent of the Walker County School System on November 2, 2010. At the time of Adkins's election, the Board had set an annual salary of $139,500 for the position of superintendent. During a regularly scheduled Board meeting on *65 July 18, 2013, the Board increased Adkins's salary by 2% effective July 1, 2013. Adkins was reelected on November 4, 2014. On December 11, 2014, the Board entered into an "employment contract" with Adkins that would become effective on January 1, 2015. That contract provided a base annual salary of $159,500, and it provided for increases in salary during Adkins's term of office. That contract also provided an in-county travel stipend of $1,000 per month. The Board modified the contract on November 12, 2015, to increase Adkins's compensation. That modification included providing Adkins with a cellular telephone paid for by the Board, allowing Adkins to participate in outside activities that do not interfere with his duties as superintendent and that are approved by the Board, and guaranteeing that, if "this agreement be permitted to expire," Adkins could return to a tenured position with the Walker County School System. Ingle attached three documents to her petition: (1) a copy of the minutes from the Board's July 18, 2013, meeting, (2) a copy of the December 11, 2014, "employment contract," and (3) a copy of the November 12, 2015, modified contract.
Ingle brought this action "in the name of the State of Alabama on the relation of Sheila Mote Ingle ... in her individual capacity as a resident citizen and taxpayer in Walker County, Alabama." Ingle sought a declaration that Adkins's July 2013 salary increase was unconstitutional, illegal, and void; that the December 2014 "employment contract" was unconstitutional, illegal, and void; and that the November 2015 modification of the employment contract was unconstitutional, illegal, and void. Ingle sought to compel the Board members "to vacate and/or rescind" the "employment contract." Further, Ingle sought to recover for the taxpayers of Walker County the allegedly illegal compensation that had already been paid to Adkins, and she sought to recover on her own behalf attorney fees. Additionally, Ingle alleged that, even if the employment contract was not determined to be unconstitutional and void, the Board had overpaid Adkins's travel stipend, and, thus, Ingle sought to recover that overpayment. Later, Ingle amended her petition to withdraw her claim for attorney fees.
The defendants moved to dismiss Ingle's claims. The defendants argued that Ingle failed to state a claim upon which relief could be granted, that Ingle's claims were barred by the doctrine of immunity, and that Ingle lacked standing to pursue her claims.
On April 10, 2017, the circuit court issued an order dismissing Ingle's claims, which stated as follows:
"This cause coming before the Court on the Motion To Dismiss the Defendants individually and in their official capacity and with the same being set for a hearing on April 5, 2017. The hearing was attended by the attorneys representing the parties and some parties. The attorneys made arguments to the Court and presented documents and briefs contained in the file. The Court having considered the arguments, documents and briefs and law presented, it is the opinion of the Court that the Motion To Dismiss should be granted; therefore, it is ORDERED, ADJUDGED, and DECREED by the Court that the Motion To Dismiss is GRANTED as to all defendants, individually and in their official capacity."
(Capitalization in original.) Ingle appealed.
Standard of Review
"A ruling on a motion to dismiss is reviewed without a presumption of correctness. Nance v. Matthews, 622 So.2d 297, 299 (Ala. 1993). This Court must accept the allegations of the complaint *66 as true. Creola Land Dev., Inc. v. Bentbrooke Housing, L.L.C., 828 So.2d 285, 288 (Ala. 2002). Furthermore, in reviewing a ruling on a motion to dismiss we will not consider whether the pleader will ultimately prevail but whether the pleader may possibly prevail. Nance, 622 So.2d at 299."
Newman v. Savas, 878 So.2d 1147, 1148-49 (Ala. 2003).
Discussion
On appeal, Ingle concedes that her claims against the Board are due to be dismissed on the basis of immunity. She also admits that she "may not seek damages or to otherwise impose civil liability on the individual Board members on account of those acts which have already occurred." Ingle's brief, at 19. Further, Ingle acknowledges that she may not have standing "to recover monies which have already been illegally expended," and she does not set forth any argument regarding the circuit court's dismissal of her claims concerning recovery of compensation that has already been paid to Adkins. Id. at 26. However, Ingle continues to seek to enjoin future payments under Adkins's current employment agreement with the Board, which Ingle claims is an illegal contract. Thus, on appeal, the issue is whether Ingle can pursue a claim against the Board members and Adkins in their individual and/or official capacities to declare Adkins's current contract illegal and to enjoin future payments from public funds pursuant to that contract.
First, we hold that the circuit court properly dismissed the claims against Adkins and the Board members in their individual capacities because "a suit for injunctive relief against a State official in his or her individual capacity would be meaningless. This is so, because State officials act for and represent the State only in their official capacities." Ex parte Dickson, 46 So.3d 468, 474 (Ala. 2010).
Now, we must decide whether Ingle can pursue claims against the Board members and Adkins in their official capacities to declare that Adkins's current contract is illegal and to enjoin payments under that contract going forward. Specifically, we must decide whether those claims are barred by the doctrine of immunity and whether Ingle has standing to pursue those claims.
Concerning immunity, this Court has stated that, "[b]ecause county boards of education are local agencies of the State, they are clothed in constitutional immunity from suit." Ex parte Hale Cty. Bd. of Educ., 14 So.3d 844, 848 (Ala. 2009). Further,
" '[u]nder Article 1, § 14, Alabama Constitution of 1901, "the State and its agencies have absolute immunity from suit in any court." Phillips v. Thomas, 555 So.2d 81, 83 (Ala. 1989) ; see also Taylor v. Troy State University, 437 So.2d 472, 474 (Ala. 1983).... "State officers and employees, in their official capacities and individually, are also absolutely immune from suit when the action is, in effect, one against the state." Phillips v. Thomas, 555 So.2d at 83 ; see Taylor v. Troy State University, 437 So.2d at 474.'
" Williams v. John C. Calhoun Cmty. Coll., 646 So.2d 1, 2 (Ala. 1994).
" ' "The wall of immunity erected by § 14 is nearly impregnable. Sanders Lead Co. v. Levine, 370 F.Supp. 1115, 1117 (M.D. Ala. 1973) ; Taylor v. Troy State Univ., 437 So.2d 472, 474 (Ala. 1983) ; Hutchinson v. Board of Trustees of Univ. of Alabama, 288 Ala. 20, 24, 256 So.2d 281, 284 (1971). This immunity may not *67 be waived. Larkins v. Department of Mental Health & Mental Retardation, 806 So.2d 358, 363 (Ala. 2001) ('The State is immune from suit, and its immunity cannot be waived by the Legislature or by any other State authority.'); Druid City Hosp. Bd. v. Epperson, 378 So.2d 696 (Ala. 1979) (same); Opinion of the Justices No. 69, 247 Ala. 195, 23 So.2d 505 (1945) (same); see also Dunn Constr. Co. v. State Bd. of Adjustment, 234 Ala. 372, 175 So. 383 (1937). 'This means not only that the state itself may not be sued, but that this cannot be indirectly accomplished by suing its officers or agents in their official capacity, when a result favorable to plaintiff would be directly to affect the financial status of the state treasury.' State Docks Comm'n v. Barnes, 225 Ala. 403, 405, 143 So. 581, 582 (1932) (emphasis added); see also Southall v. Stricos Corp., 275 Ala. 156, 153 So.2d 234 (1963)."
" ' Patterson v. Gladwin Corp., 835 So.2d 137, 142 (Ala. 2002).'
" Alabama Agric. & Mech. Univ. v. Jones, 895 So.2d 867, 872-73 (Ala. 2004).
" 'Section 14 immunity is not absolute; there are actions that are not barred by the general rule of immunity.
" ' "[C]ertain actions are not barred by § 14. There are six general categories of actions that do not come within the prohibition of § 14 : (1) actions brought to compel State officials to perform their legal duties; (2) actions brought to enjoin State officials from enforcing an unconstitutional law; (3) actions to compel State officials to perform ministerial acts; (4) actions brought against State officials under the Declaratory Judgments Act, Ala. Code 1975, § 6-6-220 et seq., seeking construction of a statute and its application in a given situation; (5) valid inverse condemnation actions brought against State officials in their representative capacity; and (6) actions for injunction or damages brought against State officials in their representative capacity and individually where it was alleged that they had acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law. See Drummond Co. v. Alabama Dep't of Transp., 937 So.2d 56, 58 (Ala. 2006) (quoting Ex parte Carter, 395 So.2d 65, 68 (Ala. 1980) ); Alabama Dep't of Transp. v. Harbert Int'l, Inc., 990 So.2d 831 (Ala. 2008) (holding that the exception for declaratory-judgment actions applies only to actions against State officials). As we confirmed in Harbert, these 'exceptions' to sovereign immunity apply only to actions brought against State officials; they do not apply to actions against the State or against State agencies. See Alabama Dep't of Transp., 990 So.2d at 840-41."
" ' Ex parte Alabama Dep't of Fin., 991 So.2d 1254, 1256-57 (Ala. 2008). The sixth "exception" to § 14 immunity was restated in Ex parte Moulton, 116 So.3d 1119, 1141 (Ala. 2013), as follows:
" ' "(6)(a) actions for injunction brought against State officials in their representative capacity where it is alleged that they had acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law, Wallace v. Board of Education of Montgomery County, 280 Ala. 635, 197 So.2d 428 (1967), and (b) actions for damages brought against State officials in *68 their individual capacity where it is alleged that they had acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law, subject to the limitation that the action not be, in effect, one against the State. Phillips v. Thomas, 555 So.2d 81, 83 (Ala. 1989)." '
" Ex parte Hampton, 189 So.3d 14, 17-18 (Ala. 2015).
" ' "These actions are sometimes referred to as 'exceptions' to § 14 ; however, in actuality these actions are simply not considered to be actions ' "against the State" for § 14 purposes.' Patterson v. Gladwin Corp., 835 So.2d 137, 142 (Ala. 2002). This Court has qualified those 'exceptions,' noting that ' "[a]n action is one against the [S]tate when a favorable result for the plaintiff would directly affect a contract or property right of the State, or would result in the plaintiff's recovery of money from the [S]tate." ' Alabama Agric. & Mech. Univ. v. Jones, 895 So.2d 867, 873 (Ala. 2004) (quoting Shoals Cmty. Coll. v. Colagross, 674 So.2d 1311, 1314 (Ala. Civ. App. 1995) ) (emphasis added in Jones )."
" ' Alabama Dep't of Transp. v. Harbert Int'l, Inc., 990 So.2d 831, 840 (Ala. 2008).'
" Vandenberg v. Aramark Educ. Servs., Inc., 81 So.3d 326, 332 (Ala. 2011).
" ' "To determine whether an action against a State officer is, in fact, one against the State, this Court considers
" ' " 'whether "a result favorable to the plaintiff would directly affect a contract or property right of the State," Mitchell [v. Davis, 598 So.2d 801, 806 (Ala. 1992) ], whether the defendant is simply a "conduit" through which the plaintiff seeks recovery of damages from the State, Barnes v. Dale, 530 So.2d 770, 784 (Ala. 1988), and whether "a judgment against the officer would directly affect the financial status of the State treasury," Lyons [v. River Road Constr., Inc.], 858 So.2d [257] at 261 [ (Ala. 2003) ].'
" ' " Haley [v. Barbour County], 885 So.2d [783] at 788 [ (Ala. 2004) ]. Additionally, '[i]n determining whether an action against a state officer is barred by § 14, the Court considers the nature of the suit or the relief demanded, not the character of the office of the person against whom the suit is brought.' Ex parte Carter, 395 So.2d 65, 67-68 (Ala. 1980)." '
" Ex parte Moulton, 116 So.3d 1119, 1130-31 (Ala. 2013) (quoting Alabama Dep't of Transp. v. Harbert Int'l, Inc., 990 So.2d 831, 839-40 (Ala. 2008) )."
Alabama State Univ. v. Danley, 212 So.3d 112, 122-24 (Ala. 2016).
In the present case, Ingle's claim against the Board members and Adkins in their official capacities to declare Adkins's current contract illegal and to enjoin payments under that contract going forward fits squarely into the sixth "exception" to § 14 immunity. Specifically, Ingle seeks an "injunction ... against State officials in their representative capacity where it is allege[d] that they had acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law." Therefore, this claim is not an action "against the State" for § 14 purposes and is not barred by § 14 immunity.
Lastly, we must decide whether Ingle has standing to pursue this claim. Ingle argues that she has private standing to pursue this claim in her individual capacity as a citizen and taxpayer and that, if *69 she does not have taxpayer standing, she has public-interest standing to pursue this claim in the name of the State.
This Court has stated:
" 'To say that a person has standing is to say that person is the proper party to bring the action. To be a proper party, the person must have a real, tangible legal interest in the subject matter of the lawsuit.' Doremus v. Business Council of Alabama Workers' Comp. Self-Insurers Fund, 686 So.2d 252, 253 (Ala. 1996). 'Standing ... turns on "whether the party has been injured in fact and whether the injury is to a legally protected right." ' [ State v. Property] at 2018 Rainbow Drive, 740 So.2d [1025] at 1027 [ (Ala. 1999) ] (quoting Romer v. Board of County Comm'rs of the County of Pueblo, 956 P.2d 566, 581 (Colo. 1998) (Kourlis, J., dissenting)) (emphasis omitted). In the absence of such an injury, there is no case or controversy for a court to consider. Therefore, were a court to make a binding judgment on an underlying issue in spite of absence of injury, it would be exceeding the scope of its authority and intruding into the province of the Legislature. See City of Daphne v. City of Spanish Fort, 853 So.2d 933, 942 (Ala. 2003) ('The power of the judiciary ... is "the power to declare finally the rights of the parties, in a particular case or controversy ...." ' (quoting Ex parte Jenkins, 723 So.2d 649, 656 (Ala. 1998) )); Allen v. Wright, 468 U.S. 737, 752, 104 S.Ct. 3315, 82 L.Ed. 2d 556 (1984) ('[T]he law of Art. III standing is built on a single basic idea-the idea of separation of powers.').
"In Jones v. Black, 48 Ala. 540 (1872), this Court first articulated a test for determining whether a party has the necessary standing to challenge the constitutionality of an act of the Legislature. We stated then:
" 'A party who seeks to have an act of the legislature declared unconstitutional, must not only show that he is, or will be injured by it, but he must also show how and in what respect he is or will be injured and prejudiced by it. Injury will not be presumed; it must be shown.'
" 48 Ala. at 543. In Alabama Alcoholic Beverage Control Board v. Henri-Duval Winery, LLC, 890 So.2d 70, 74 (Ala. 2003), a party challenged the constitutionality of Alabama's Native Farm Winery Act, § 28-6-1 et seq., Ala. Code 1975. In that case, this Court effectively restated the standard articulated in Jones, using language adopted from the Supreme Court of the United States:
" 'A party establishes standing to bring a challenge [on constitutional grounds] when it demonstrates the existence of (1) an actual, concrete and particularized "injury in fact"-"an invasion of a legally protected interest"; (2) a "causal connection between the injury and the conduct complained of"; and (3) a likelihood that the injury will be "redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).'
"(Emphasis added.)"
Town of Cedar Bluff v. Citizens Caring for Children, 904 So.2d 1253, 1256-57 (Ala. 2004) (footnote omitted).
" 'When a party without standing purports to commence an action, the trial court acquires no subject-matter jurisdiction.' State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1028 (Ala. 1999). Under such a circumstance, the trial court has 'no alternative but to dismiss the action.' 740 So.2d at 1029."
*70 Ex parte Chemical Waste Mgmt., Inc., 929 So.2d 1007, 1010 (Ala. 2005).
Concerning whether a person has standing as a citizen and taxpayer, this Court has recognized that
"[i]t is well settled that a taxpayer, in certain situations, has standing to challenge a proposed illegal expenditure by a state official. See Turnipseed v. Blan, 226 Ala. 549, 552, 148 So. 116, 118 (1933) (recognizing 'the right of a taxpayer to maintain a suit in equity to restrain an officer of a city or county from disbursing funds without statutory authority or under an unconstitutional statute' and holding that the same right applies in the context of suits in equity against state officers (emphasis added)); Goode v. Tyler, 237 Ala. 106, 109, 186 So. 129, 131 (1939) ('[T]his Court is committed to the doctrine that a taxpayer may maintain a suit in equity to restrain a state officer in the unlawful disbursement of state funds.' (emphasis added)); Zeigler v. Baker, 344 So.2d 761 (Ala. 1977) (upholding an order of the trial court granting the taxpayer-plaintiff an injunction enjoining the comptroller, the finance director, and the treasurer of the State from making payments from public funds under the authority of an unconstitutional act)."
Beckerle v. Moore, 909 So.2d 185, 187 (Ala. 2005).
Further,
"[i]n a long line of decisions this Court has recognized the right of a taxpayer to challenge, either as unconstitutional or as not conforming to statute, the expenditure of public funds by county officers. Court of County Revenues v. Richardson, 252 Ala. 403, 41 So.2d 749 (1949) ; Poyner v. Whiddon, 234 Ala. 168, 174 So. 507 (1937) ; Thompson v. Chilton County, 236 Ala. 142, 181 So. 701 (1938) ; Travis v. First Nat. Bank of Evergreen, 210 Ala. 620, 98 So. 890 (1924) ; Reynolds v. Collier, 204 Ala. 38, 85 So. 465 (1920). The right of a taxpayer to challenge the unlawful disbursement of state funds likewise is unquestioned. Goode v. Tyler, 237 Ala. 106, 186 So. 129 (1939) ('... this Court is committed to the doctrine that a taxpayer may maintain a suit in equity to restrain a state officer in the unlawful disbursement of state funds.'); Hall v. Blan, 227 Ala. 64, 148 So. 601 (1933) ; Turnipseed v. Blan, 226 Ala. 549, 148 So. 116 (1933). The latter two cases dealt with the constitutionality of disbursements, while Goode involved expenditures to be made under purported statutory authority. The Supreme Court of Illinois wrote to this principle in Fergus v. Russel, 270 Ill. 304, 110 N.E. 130 (1915) :
" 'We have repeatedly held that taxpayers may resort to a court of equity to prevent the misapplication of public funds, and that this right is based upon the taxpayer[s'] equitable ownership of such funds and their liability to replenish the public treasury for the deficiency which would be caused by the misappropriation.' "
Zeigler v. Baker, 344 So.2d 761, 763-64 (Ala. 1977). "[I]t is this liability to replenish the public treasury through the payment of taxes that gives a plaintiff in a taxpayer's action standing." Broxton v. Siegelman, 861 So.2d 376, 385 (Ala. 2003).
"This Court is committed to the proposition that a taxpayer may maintain a bill to prevent a misappropriation of the county funds. Reynolds, County Treas., et al. v. Collier, 204 Ala. 38, 85 So. 465 [ (1920) ] ; Potts v. Commissioners' Court of Conecuh County, 203 Ala. 300, 82 So. 550 [ (1919) ] ; O'Rear v. Sartain, 193 Ala. 275, 69 So. 554 [ (1915) ].
"Borchard in his treatise on Declaratory Judgments, at p. 597, observes:
" 'In most states of the United States, and practically always in *71 American municipalities, a taxpayer is deemed to have sufficient legal interest to prevent by injunction the improper or illegal expenditure of public funds, without invoking the actual or pro forma aid of an attorney general as party plaintiff. A fortiori, therefore, he has sufficient interest to request declaratory relief against such expenditure or activity, whether in the form of a proposed or signed contract, or otherwise....' "
Thompson v. Chilton Cty., 236 Ala. 142, 144, 181 So. 701, 702-03 (1938).
Thus, this Court has repeatedly recognized that a taxpayer has standing to seek an injunction against public officials to prevent illegal payments from public funds. The following is Adkins and the Board members' response to Ingle's assertion that she has a taxpayer standing:
" 'Government officials cannot be sued simply because a person thinks the officials are doing something wrong; the thing they are doing must result in "concrete and particularized" and "actual or imminent" harm to the person seeking judicial relief.' Ex parte State ex rel. Ala. Policy Inst., 200 So.3d 495, 556 (Ala. 2015) (Shaw, J., dissenting). The Court explained in Ala. Policy Inst. that to have standing, '[i]t is generally insufficient that a plaintiff merely has a general interest common to all members of the public.' 200 So.3d at 517 (quoting State ex rel. Cittadine v. Indiana Dep't of Transp., 790 N.E.2d 978, 983 (Ind. 2003) ). Ingle has no greater interest than all other members of the public in the terms and conditions of Dr. Adkins' service. Consequently, she lacks standing individually and her claims were properly dismissed."
Adkins and Board members' brief, at 7.
It is correct that, for over a century, Alabama has followed the general rule that, to have standing to bring an action, the plaintiff must have an interest in the outcome of the action and show that he or she has suffered or imminently will suffer an injury. See Town of Cedar Bluff, 904 So.2d at 1256 (recognizing that in 1872 this Court first articulated that, to have standing, a party must demonstrate an injury). However, since Alabama first recognized that rule, this Court has also continually held that taxpayers have standing to seek an injunction against public officials to prevent illegal payments from public funds. This standing is based on the fact that taxpayers have an equitable ownership in the public funds and will be responsible for replenishing the public funds if those funds are misappropriated, and, thus, a taxpayer suffers an injury when public funds are illegally spent. Therefore, Ingle has standing as a taxpayer to seek an injunction against Adkins and the Board members in their official capacities to prevent illegal payments from public funds. Furthermore, because Ingle has standing to pursue this claim as a taxpayer, we need not discuss whether she has public-interest standing to pursue this claim in the name of the State.
In their briefs on appeal, the parties also set forth arguments concerning the merits of Ingle's claims. However, those arguments are not ripe for consideration at this stage of the litigation, and, thus, we will not consider them at this time.
Conclusion
Based on the foregoing, this Court reverses the circuit court's order dismissing Ingle's claims against the Board members and Adkins in their official capacities alleging that Adkins's current agreement with the Board is illegal and seeking to enjoin payments under that agreement going forward, and we remand the case for proceedings consistent with this opinion. In all *72 other respects, this Court affirms the circuit court's order of dismissal.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Stuart, C.J., and Bolin and Bryan, JJ., concur.
Murdock, J., concurs in the result.

It appears that Waid and Reeves are no longer members of the Board. Shortly after the November 2016 election, Waid and Reeves moved to have themselves dismissed from the case in their official capacities because they had ceased to hold office. Ingle conceded that Waid and Reeves should no longer be parties to the case in their official capacities, but she argued that under Rule 25, Ala. R. Civ. P., Waid's and Reeves's successors were automatically substituted as parties. The defendants argued that Ingle must "file[ ] something to identify [the successors]." The trial court did not make a specific ruling on this issue.