Rel: April 7, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2022-2023

_____

## SC-2022-0869

_____

## Tommy Hanes, David Calderwood, and Focus on America

## v.

## John Merrill, in his official capacity as Alabama Secretary of State, and Bill English, Wes Allen, Clay Crenshaw, Jeff Elrod, and Will Barfoot, in their official capacities as members of the Alabama Electronic Voting Committee

## Appeal from Montgomery Circuit Court
## (CV-22-900595)

SELLERS, Justice.

Tommy Hanes, David Calderwood, and Focus on America ("the plaintiffs")[1] appeal from the judgment of the Montgomery Circuit Court dismissing their claims against John Merrill, in his official capacity as the Alabama Secretary of State, and Bill English, Wes Allen, Clay Crenshaw, Jeff Elrod, and Will Barfoot, in their official capacities as members of the Alabama Electronic Voting Committee ("the committee").[2]

## I. Facts

In May 2022, the plaintiffs commenced this action, seeking declaratory and injunctive relief. The complaint related to the general

---

[1]Hanes was a candidate in the November 2022 general election who unsuccessfully sought reelection to the Alabama House of Representatives; he asserted standing to bring the complaint as a voter and qualified elector. Calderwood is a resident of Madison County who asserted standing to bring the complaint as a voter and qualified elector. Focus on America is a tax-exempt, nonprofit, social-welfare organization under 26 U.S.C. § 501(c)(4), a part of the Internal Revenue Code, that, according to the complaint, operates in DeKalb County "to assist members of the public in becoming better informed members of their community" and that generally asserted standing to bring the complaint.

[2]Merrill is no longer the Alabama Secretary of State, and it appears that the membership of the committee might have changed as well. Rule 25(d), Ala. R. Civ. P., and Rule 43(b), Ala. R. App. P., provide that if a public officer is a party to an action or an appeal in an official capacity and the officer ceases to hold office during the pendency of the action or the appeal, the officer's successor is automatically substituted as a party.

use of electronic-voting machines in the November 2022 general statewide election and in all future elections. The plaintiffs primarily sought to enjoin the usage of electronic-voting machines to count ballots. They specifically sought an order requiring that the 2022 election be conducted by paper ballot, with three individuals as independent counters who would manually count each ballot in full view of multiple cameras that could record and broadcast the counting proceedings, among other measures. The plaintiffs claim that the use of electronic-voting machines is so insecure, both inherently and because of the alleged failures of the secretary of state and the committee members ("the defendants") in certifying the machines, that it has infringed upon their constitutional right to vote, or, in the case of Focus on America, the right to vote of those persons it represents.

The defendants filed a motion to dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6), Ala. R. Civ. P. They argued that the plaintiffs lacked standing, that the claims were moot, that State or Sovereign immunity under Art. I, § 14, of the Alabama Constitution barred the claims, that the complaint failed to state a claim upon which relief could be granted, and that the court lacked jurisdiction pursuant to § 17-16-44, Ala. Code

3

1975, also known as the "jurisdiction-stripping statute." The plaintiffs filed a motion for a preliminary injunction, seeking to suspend the use of electronic-voting machines in the November 2022 general election and in all future elections. The circuit court held a hearing on both motions. Following the hearing, the circuit court entered a judgment dismissing the complaint and denying the plaintiffs' motion for preliminary injunctive relief. In that judgment, the circuit court found that the jurisdiction-stripping statute barred the plaintiffs' action, that the plaintiffs lacked standing, that the complaint failed to state a claim upon which relief could be granted, and that sovereign immunity barred the plaintiffs' claims. This appeal followed.

## II. Standard of Review

In an appeal of a circuit court's judgment granting a motion to dismiss, the applicable standard of review has been stated as follows:

> "A ruling on a motion to dismiss is reviewed without a presumption of correctness. Nance v. Matthews, 622 So. 2d 297, 299 (Ala.1993). This Court must accept the allegations of the complaint as true. Creola Land Dev., Inc. v. Bentbrooke Housing, L.L.C., 828 So. 2d 285, 288 (Ala. 2002). Furthermore, in reviewing a ruling on a motion to dismiss we will not consider whether the pleader will ultimately prevail but whether the pleader may possibly prevail. Nance, 622 So. 2d at 299."

Newman v. Savas, 878 So. 2d 1147, 1148-1149 (Ala. 2003).

4

In addition, this Court has stated:

"'"[A] court ruling on a Rule 12(b)(1)[, Ala. R. Civ. P.,] motion to dismiss 'may consider documents outside the pleadings to assure itself that it has jurisdiction.' Al-Owhali [v. Ashcroft], 279 F. Supp. 2d [13,] 21 [(D.D.C. 2003)]; see also Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987) ('In 12(b)(1) proceedings, it has been long accepted that the judiciary may make appropriate inquiry beyond the pleadings to satisfy itself on [its] authority to entertain the case.' (internal citations and quotation marks omitted)). The level of scrutiny with which the Court examines the allegations in the complaint that support a finding of jurisdiction, however, depends upon whether the motion to dismiss asserts a facial or factual challenge to the court's jurisdiction. See I.T. Consultants v. Pakistan, 351 F.3d 1184, 1188 (D.C. Cir. 2003).

"'"Facial challenges, such as motions to dismiss for lack of standing at the pleading stage, 'attack[] the factual allegations of the complaint that are contained on the face of the complaint.' Al-Owhali, 279 F. Supp. 2d at 20 (internal quotation marks and citation omitted). 'If a defendant mounts a "facial" challenge to the legal sufficiency of the plaintiff's jurisdictional allegations, the court must accept as true the allegations in the complaint and consider the factual allegations of the complaint in the light most favorable to the non-moving party.' Erby [v. United States,] 424 F. Supp. 2d [180,] 181 [(D.D.C. 2006)]; see also I.T. Consultants, 351 F.3d at 1188. The court may look beyond the allegations contained in the complaint to decide a facial challenge, 'as long as it still accepts the factual allegations in the complaint as true.' Abu Ali [v. Gonzales,] 387 F. Supp. 2d [16,] 18 [(D.D.C. 2005)]; see also Jerome Stevens Pharm., Inc. v. Food & Drug Admin., 402 F.3d 1249, 1253-54 (D.C. Cir. 2005) ('At the pleading stage .... [w]hile the district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction, the court must still accept all of the factual allegations in the complaint as true.' (internal citations and quotation marks omitted))."'"

Munza v. Ivey, 334 So. 3d 211, 216 (Ala. 2021) (quoting Ex parte Safeway Ins. Co. of Alabama, 990 So. 2d 344, 349 (Ala. 2008), quoting in turn Lindsey v. United States, 448 F. Supp. 2d 37, 43 (D.D.C. 2006).

### III. Analysis

The plaintiffs present several arguments on appeal. For the reasons stated below, we conclude that they lacked standing to pursue this action and, therefore, we pretermit discussion of the plaintiffs' other arguments.

### A. Standing in General

The plaintiffs lacked standing, both to challenge the use of electronic-voting machines and to challenge the defendants' actions in certifying them. In "public-law cases," such as this case, standing is an absolute necessity for a court to obtain subject-matter jurisdiction. See Ex parte BAC Home Loans Servicing, LP, 159 So. 3d 31, 44 (Ala. 2013); State v. Property at 2018 Rainbow Dr., 740 So. 2d 1025, 1028 (Ala. 1999). To determine whether a party has standing, we employ the test set forth in Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992). Ex parte Aull, 149 So. 3d 582 (Ala. 2014). Principally, under that test, the plaintiffs must demonstrate "an actual, concrete and particularized 'injury in fact' -- 'an invasion of a legally protected interest.'" Alabama Alcoholic Beverage

6

Control Bd. v. Henri-Duval Winery, L.L.C., 890 So. 2d 70, 74 (Ala. 2003) (quoting Lujan, 504 U.S. at 560). An injury in fact must be "'(a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'"'" Ex parte Alabama Educ. Television Comm'n, 151 So. 3d 283, 287 (Ala. 2013) (quoting Lujan, 504 U.S. at 560).

Applying the Lujan test, it is clear that the plaintiffs have alleged only a conjectural, hypothetical, injury.[3] The plaintiffs argue that because of the nature of electronic-voting machines and the defendants' actions in certifying such machines, the vote tallies for elections cannot be trusted, thus diminishing the value of Hanes's and Calderwood's votes or the votes of persons Focus on America represents. Specifically, they contend that somebody could "potentially" tamper with the machines, connect them to the Internet, and use that connection to distort the vote

---

[3]We note that an amicus brief was filed in this case. That brief requested, in essence, that we overrule our precedent applying the Lujan test for standing. This Court has stated that it "will not decide a question presented by amicus curiae which was not presented by the parties to the cause, and will leave the question for decision when properly raised and presented." State ex rel. Baxley v. Johnson, 293 Ala. 69, 74, 300 So. 2d 106, 110 (1974) (citing Alabama-Tennessee Nat. Gas Co. v. City of Huntsville, 275 Ala. 184, 153 So. 2d 619 (1963)). Because the parties' arguments fall completely within the framework of Lujan and our precedent, we will not consider the amicus's arguments, which go far beyond the scope of the parties' briefs and the plaintiffs' request for relief.

totals so significantly as to undermine their constitutional right to vote. However, the plaintiffs do not allege that any such behavior actually occurred in Alabama. Rather, they merely argue that the <u>possibility</u> of those things occurring infringes upon their right to vote.

The injury alleged in the plaintiffs' complaint is, by definition, conjectural. <u>See</u> <u>Storino v. Borough of Point Pleasant Beach</u>, 322 F.3d 293, 297-98 (3d Cir. 2003) (observing that "one cannot describe how the [plaintiffs] will be injured without beginning the explanation with the word 'if'"). The plaintiffs' injury argument relies entirely upon hypotheticals and unspecified potentialities. Their complaint does little more than suggest the possibility that the use of electronic-voting machines "'could' impact the fairness and accuracy of elections." <u>Ex parte Merrill</u>, 264 So. 3d 855, 864 (Ala. 2018). It does not assert that any Alabama votes have actually been miscounted or that vote totals have been altered to achieve an inaccurate election result. In other words, the plaintiffs do not "demonstrate <u>how</u> the 'challenged practices harm'" them; rather, they "allege only that they 'could' be harmed." <u>Id.</u> (quoting <u>Ex parte HealthSouth Corp.</u>, 974 So. 2d 288, 293 (Ala. 2007)). The plaintiffs discuss many things that <u>could</u> go wrong and ultimately lead to

8

the dilution of their votes. But they fail to allege anything that <u>has</u> gone wrong. As a result, the plaintiffs have failed to allege an injury in fact. They thus lacked standing to pursue the claims contained in their complaint because they alleged a hypothetical injury, i.e., one that is conjectural rather than actual.

### B. Taxpayer Standing

On appeal, the plaintiffs also argue that they possessed standing as taxpayers to challenge the past purchases of the electronic-voting machines and laptop computers ("the laptops") used to administer vote-counting functions. The plaintiffs point to the principle that "taxpayers have an equitable ownership in the public funds and will be responsible for replenishing the public funds if those funds are misappropriated, and, thus, a taxpayer suffers an injury when public funds are illegally spent." <u>Ingle v. Adkins</u>, 256 So. 3d 62, 71 (Ala. 2017) (plurality opinion). Indeed, we have "continually held that taxpayers have standing to seek an injunction against public officials to prevent illegal payments from public funds." <u>Id.</u> However, the laptops and electronic-voting machines have already been purchased. The principle espoused in <u>Ingle</u> serves only to "<u>prevent</u> illegal payments from public funds." <u>Id.</u> (emphasis added). The

9

plaintiffs cite no authority and make no argument regarding why that principle should apply to past purchases. Even the plaintiff in Ingle "acknowledge[d] that she may not have [had] standing 'to recover monies which [had] already been illegally expended.'" Id. at 66. This Court has explicitly held as much, stating that "[the plaintiffs'] status as taxpayers is not sufficient to confer upon them standing to sue a state official to recover public funds allegedly wrongfully expended because of the acts of that official." Beckerle v. Moore, 909 So. 2d 185, 188 (Ala. 2005). Although we make no determination regarding the legality of the purchases in question, we reiterate that a state official's allegedly improper expenditure of funds in the distant past does not give taxpayers standing to challenge that expenditure. It logically follows then that, when a past expenditure of state funds -- whether legitimate, illegal, or improper -- has only a marginal relation to the matter complained of, taxpayer status not only does not confer standing to challenge the expenditure of the funds, but also does not confer standing to challenge the marginally related matter. In short, the defendants' past purchase of the electronic-voting machines and laptops does not provide a platform for the plaintiffs

10

to obtain standing to seek to enjoin the conduct of elections. As a result, the plaintiffs also lacked taxpayer standing to pursue their claims.[4]

## IV. Conclusion

For the foregoing reasons, the plaintiffs lacked standing to pursue their claims, thus depriving the circuit court of jurisdiction over their complaint. Accordingly, the judgment dismissing the complaint is due to be affirmed.

AFFIRMED.

Mendheim and Stewart, JJ., concur.

Mitchell and Cook, JJ., concur specially, with opinions.

Parker, C.J., concurs in part and concurs in the result, with opinion.

Shaw and Bryan, JJ., concur in the result.

Wise, J., recuses herself.

---

[4]In their complaint, the plaintiffs also requested that the circuit court order the release of all "records, communications, contracts, notes … stored by [the defendants] to the Public as required by Alabama law." The plaintiffs have at no point presented a basis for the release of any such records. Further, for the reasons stated above, the plaintiffs lacked standing to make such a request.

MITCHELL, Justice (concurring specially).

I concur in the decision to affirm the trial court's judgment based on our current precedent. I write separately to second Justice Cook's call to reconsider our Court's adoption of the federal standing test announced in <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555 (1992). I would like to see that reconsideration occur in a case in which a party has properly asked us to undertake that review and (perhaps along with amici) given us fulsome argument on this issue.

COOK, Justice (concurring specially).

I concur fully in the main opinion. I write specially for three reasons.

First, I wish to emphasize that the separation of powers is one of the reasons for the doctrine of standing. As the main opinion notes, the plaintiffs' fears are, at this point, conjectural. If they believe policy needs to change, that is for the Legislature or the Executive Branch to undertake. The People of Alabama elect members of the Legislature and the Executive Branch to investigate policy, to balance competing policy objectives, to balance competing spending demands, and to make policy choices. The People of Alabama hold (and should hold) the members of the Legislature and the Executive Branch accountable for their policy choices. It is almost never the role of this Court (or any court) to create procedures and regulations, and yet the plaintiffs in this action are asking this Court to do just that -- listing in their complaint two pages of detailed "procedures which should be implemented." If the plaintiffs truly want such procedures and regulations to be created, they should present their proposals to the members of the Legislature and the newly-elected Secretary of State.

Second, with regard to the amicus brief filed by the Alabama Center for Law and Liberty, which requested, in essence, that we overrule our precedent applying the Lujan test for standing, I note that I agree that this Court should consider, in the right case, the proper standard for standing under the Alabama Constitution. Although I have no fixed opinion on this issue, I believe that it deserves careful consideration and that we should not simply adopt the federal standard without considering any relevant differences between the Alabama Constitution and the Constitution of the United States. As for the present case, the main opinion correctly follows existing Alabama precedent, and neither the plaintiffs nor the defendants have requested that we overrule that precedent. However, should this issue be raised in a future, appropriate case, this Court could consider holding oral argument so that the parties -- and the members of the Bar -- can benefit from our full consideration of this issue.

Finally, in a footnote, the main opinion indicates that the plaintiffs requested records from the Secretary of State but "have at no point presented a basis for the release of any such records." ___ So. 3d at ___ n.4. I note that Alabama law provides an avenue to request records of

14

government agencies and to seek review of failures to provide records; it also provides certain exceptions to disclosure of such records. However, this issue was not argued by the plaintiffs in their briefs and is, therefore, waived. <u>See</u> <u>Douglas v. Roper</u>, [Ms. 1200503, June 24, 2022] \_\_\_\_ So. 3d \_\_\_\_, \_\_\_\_ (Ala. 2022) ("Arguments not raised in an appellant's initial brief are deemed waived.").

PARKER, Chief Justice (concurring in part and concurring in the result).

The plaintiffs have raised serious allegations about the integrity of our State's voting system. "Free, fair elections are the lifeblood of our democracy. Charges of unfairness are serious." Donald J. Trump for President, Inc. v. Secretary of Commonwealth, 830 F. App'x 377, 381 (3d Cir. 2020). This Court's affirmance of the dismissal of the plaintiffs' complaint for lack of standing in no way diminishes the fact that, in an appropriate forum and through the appropriate means, the integrity and security of our elections must be carefully protected, including in our courts. The responsibility of all the officials of Alabama to secure our elections remains undiminished by the dismissal of the plaintiffs' complaint.

I agree that the plaintiffs' complaint was insufficient to meet the requirements for standing. However, I base this conclusion on the redressability requirement, not the injury-in-fact requirement. Moreover, I believe that our analysis of standing should return, as an amicus curiae brief by the Alabama Center for Law and Liberty ("ACLL") has effectively highlighted, to the common law's understanding, which

16

was based on the distinction between private and public rights.[5] I concur in part III.B of the main opinion and its discussion of taxpayer standing. My disagreement is with regard to part III.A's discussion of the more general requirements for standing, and as to that part I concur in the

---

[5]The main opinion states that, because the framework of standing stated in Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992), is not challenged by the parties, "we will not consider the amicus's arguments, which go far beyond the scope of the parties' briefs and the plaintiffs' request for relief." __ So. 3d at __ n.3. The main opinion emphasizes past precedent indicating that we do not decide questions that are raised by amici but are not presented by the parties. I certainly agree that, if an amicus presents an entirely new ground for reversal of the judgment, it is not appropriate to reverse on that ground. But I do not agree that parties must challenge the framework of past precedent for us to be willing to reconsider it. If a case was wrongly decided, we can and should say so when necessary, without waiting for a party to argue that it was.

Justice Mitchell and I have previously invited parties, amici, and scholars to address the Alabama Constitution's original meaning. See Barnett v. Jones, 338 So. 3d 757, 766-69 (Ala. 2021) (Mitchell, J., joined by Parker, C.J., concurring specially); Glass v. City of Montgomery, [Ms. 1200240, Feb. 11, 2022] ___ So. 3d ___, ___ & n.3 (Ala. 2022) (Mitchell, J., concurring in part and concurring in the result); id. at ___ n.4 (Parker, C.J., dissenting); Young Americans for Liberty at Univ. of Alabama in Huntsville v. St. John, [Ms. 1210309, Nov. 18, 2022] ___ So. 3d ___, ___ (Ala. 2022) (Parker, C.J., concurring in part and concurring in the result); Gulf Shores City Bd. of Educ. v. Mackey, [Ms. 1210353, Dec. 22, 2022] ___ So. 3d ___, ___ (Ala. 2022) (Parker, C.J., concurring in part and concurring in the result); id. at ___ (Mitchell, J., concurring in part and concurring in the result). I commend the ACLL's responsive attempt to do just that in this case, and I reiterate my invitation for amici to brief this Court on the Alabama Constitution's original meaning in future cases.

result. To understand standing, "we must 'refer directly to the traditional, fundamental limitations upon the powers of common-law courts.'" <u>Spokeo, Inc. v. Robins</u>, 578 U.S. 330, 334 (2016) (Thomas, J., concurring) (quoting <u>Honig v. Doe</u>, 484 U.S. 305, 340 (1988) (Scalia, J., dissenting)).

The standing inquiry depends on the nature of the claimed right, public or private. <u>TransUnion LLC v. Ramirez</u>, 594 U.S. ___, ___, 141 S. Ct. 2190, 2217 (2021) (Thomas, J., dissenting); see <u>Spokeo</u>, 578 U.S. at 344-46 (Thomas, J., concurring); <u>Thole v. U.S. Bank N.A.</u>, 590 U.S. ___, ___, 140 S. Ct. 1615, 1618-19 (2020); <u>Sierra v. City of Hallandale Beach</u>, 996 F.3d 1110, 1139 (11th Cir. 2021) (Newsom, J., concurring). I believe that Alabama law historically reflected this public/private distinction. Twenty years ago, however, our Court made the standing inquiry universal by applying United States Supreme Court precedent regarding public rights to a private breach-of-contract action. See <u>Avis Rent A Car Sys., Inc. v. Heilman</u>, 876 So. 2d 1111, 1119 (Ala. 2003). Applying public-right principles to private-right cases was flawed, but thankfully, our Court has begun returning to the historic public/private distinction. See <u>Ex parte BAC Home Loans Servicing, LP</u>, 159 So. 3d 31, 39-46 (Ala.

18

2013). I view this return as a positive development, because this distinction is rooted in the common law.

The distinction between private and public rights is thoroughly described in the work of William Blackstone, whose work, as I have highlighted elsewhere, was integral to the development of the American legal tradition. See, e.g., Young Americans for Liberty at Univ. of Alabama in Huntsville v. St. John, [Ms. 1210309, Nov. 18, 2022] ___ So. 3d ___, ___ (Ala. 2022) (Parker, C.J., concurring in part and concurring in the result). Blackstone distinguished between private wrongs that are "an infringement or privation of the private or civil rights belonging to individuals, considered as individuals," and public wrongs that "are a breach and violation of public rights and duties, which affect the whole community, considered as a community." 3 William Blackstone, Commentaries *2. Under Blackstone's conception, the executive, in his case the king, is "in all cases the proper prosecutor for every public offense." 4 Blackstone, Commentaries *2.

Justice Clarence Thomas has thoroughly demonstrated how this distinction categorizes "standing" cases. See TransUnion, 594 U.S. at ___, 141 S. Ct. at 2217 (Thomas, J., dissenting). On the one hand, if an

individual is suing for a violation of a private right, "standing" requires a cause of action, not an independent injury proved apart from the cause of action itself. "[W]here the law gives an action for a particular act, the doing of that act imports of itself a damage to the party" because "[e]very violation of a right imports some damage." Whittemore v. Cutter, 29 F. Cas. 1120, 1121 (Story, Circuit Justice, C.C.D. Mass. 1813). These private rights may be recognized by common law or by statute. "In a suit for the violation of a private right, courts historically presumed that the plaintiff suffered a de facto injury [if] his personal, legal rights [were] invaded." Spokeo, 578 U.S. at 344 (Thomas, J., concurring). In contrast, when an individual sues on the basis of a duty owed to the community, standing requires "not only injuria [legal injury] but also damnum [damage]." Id. at 346. "Public rights can most paradigmatically be vindicated by the government itself. But they can also be vindicated by private people if those people suffered 'special damage' that distinguishes them from other members of the public." William Baude, Standing in the Shadow of Congress, 2016 Sup. Ct. Rev. 197, 228 (2016) (footnotes omitted); see F. Andrew Hessick, Standing, Injury in Fact, and Private Rights, 93 Cornell L. Rev. 275 (2008); Ann Woolhandler & Caleb Nelson, Does History

Defeat Standing Doctrine?, 102 Mich. L. Rev. 689 (2004); Cass R. Sunstein, Injury in Fact, Transformed, 2021 Sup. Ct. Rev. 349 (2021); Jacob Phillips, Transunion, Article III, and Expanding the Judicial Role, 23 Federalist Soc'y Rev. 186 (2022). What this means, practically, is that standing should not be an independent inquiry in private-right cases; instead, a court should ask solely whether the plaintiff has a cause of action. "By contrast, courts have required the government to bring actions -- most notably, criminal prosecutions -- that alleged injuries to generalized, shared interests and that sought remedies accruing to the public." Sierra, 996 F.3d at 1135-36 (Newsom, J., concurring).

This view is not merely a view of federal judges. Alabama cases confirm this view and require injury in public-right cases. As the plaintiffs highlight in their brief, in Jones v. Black, 48 Ala. 540 (1872), this Court explained the standing requirements in public-right cases. Electors sought to challenge a judicial election as illegitimate. The Court emphasized that it will not "listen to an objection made to the constitutionality of an act of the legislature by a party whose rights it does not specially affect." Id. at 543.

> "A party who seeks to have an act of the legislature declared unconstitutional, must not only show that he is, or

will be injured by it, but he must also show how and in what respect he is or will be injured and prejudiced by it. Injury will not be presumed; it must be shown."

Id. Because the electors did "not state how or in what manner they are or will be injured or prejudiced at all, either in their persons, their property or their rights, by the election," their lawsuit was dismissed. Id. The plaintiffs do not challenge Jones, which has been regularly cited by our Court since it was decided, or contend that the decision was erroneous in some way. Jones requires that, when suing on the basis of the violation a public right, a plaintiff must establish injury in fact, unlike a plaintiff suing based on a private right.

More recently, our Court has begun returning to the distinction between public rights and private rights as central to a proper analysis of whether a standing inquiry is required.

> "The problem identified by Judge Pittman and others is a function of the fact that the concept of standing was developed by the United States Supreme Court for 'public law' cases, see, e.g., Lujan v. Defenders of Wildlife, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), not 'private law' cases. In the absence of defined elements as exist in established private causes of action, the concept of standing is used to differentiate between those complaints regarding governmental action that are shared generally by the citizenry and that therefore must be addressed politically and those complaints that reflect a sufficient specific injury and

22

consequent adverseness to make for a 'case' that is within the purview of the judicial branch. Accordingly, the concept appears to have no necessary role to play in respect to private-law actions, which, unlike public-law cases (for example, a suit against the Secretary of Interior to construe and enforce an environmental regulation designed to protect wildlife), come with established elements that define an adversarial relationship and 'controversy' sufficient to justify judicial intervention. In private-law actions (e.g., a claim of negligence or, as here, a statutory claim for ejectment), if the elements are met, the plaintiff is entitled to judicial intervention; if they are not met, then the plaintiff is not entitled to judicial intervention. Everything necessary to justify judicial intervention, by definition, inheres in those elements that we say constitute a 'cause of action' in and by our courts. What need is there to distill from those elements and label some additional gate-keeping notion? At a very fundamental level, the concept of standing is already embodied in the various elements prescribed, including the common requirement of proof of a sufficient existing or threatened injury.

"Professors Wright and Miller are just two of the commentators who have recognized that the concept of standing was formulated by the United States Supreme Court in the field of 'public law' -- constitutional or other challenges to the actions of officials or administrative agencies -- and is out of place in private-law cases."

BAC, 159 So. 3d at 44.

The distinction this Court drew between public-law and private-law cases did not originate with us, but with Blackstone, and it is fundamental to the role of common-law courts. Therefore, when this

23

Court addresses standing, our inquiry should always begin with whether a plaintiff is suing based on a private right or a public right. If a plaintiff is suing based on a private right, such as in tort, in contract, based on property rights, or the like, no independent "standing" inquiry is necessary. Defendants are of course free to allege that the plaintiff failed to state a claim under Rule 12(b)(6), Ala. R. Civ. P., but there is no separate standing requirement. In contrast, standing, including injury in fact, is a requirement with robust history and tradition in its support in cases involving public rights.

As the defendants' brief highlights in response to the ACLL's amicus brief, the plaintiffs' claims about purported risks of fraud in the State's electoral system are not private-right claims but claims based on threats to the public as a whole. To assert a claim based on a public right, a party must assert an injury in fact. "The [Supreme] Court has said time and again that, when a plaintiff seeks to vindicate a public right, the plaintiff must allege that he has suffered a 'concrete' injury particular to himself." Spokeo, 578 U.S. at 346 (Thomas, J., concurring). The plaintiffs here are not suing based on some specific act done to themselves, such as in a tort or contract claim. They certainly are not suing based on a

24

statutorily authorized private cause of action. Instead, they are suing based on an alleged violation of officials' duty to the public with regard to the management of elections. Thus, the line of cases requiring injury in fact in actions regarding public rights applies. Judge Kevin Newsom thoroughly explained this distinction:

> "The way I now see things, therefore, Congress can create causes of action, for instance, authorizing a private plaintiff to vindicate his personal rights …. What Congress can't do is create a cause of action authorizing an individual plaintiff to sue for harm done to society generally. So, to use the facts of this case, Congress can authorize Eddie Sierra to sue the City of Hallandale Beach for failing to accommodate him, as the [Americans with Disabilities Act] requires. … But it couldn't authorize him to sue the City for failing to accommodate those with disabilities more generally. Nor can Congress create a private cause of action authorizing an individual to pursue remedies that accrue to the public generally rather than to him personally."

Sierra, 996 F.3d at 1136 (Newsom, J., concurring). The issue of legislative authorization and creation of a private cause of action aside, to sue for a wrong to the public, there must be a particular injury experienced by the plaintiff. Because the plaintiffs here do not claim that a private wrong was committed against them, but that the defendants violated their duties to the public more generally with regard to elections, standing, including injury in fact, was a requirement for the plaintiffs to be able to

25

bring their suit.

Thus, I agree that the injury-in-fact requirement applies. But I disagree with the main opinion's analysis under that requirement. Throughout, the main opinion highlights the prospective nature of the plaintiffs' claims: "The plaintiffs discuss many things that <u>could</u> go wrong and ultimately lead to the dilution of their votes. But they fail to allege anything that <u>has</u> gone wrong." __ So. 3d at __. This discussion would give the impression that, at least in the public-right context, a challenge to government activity before it occurs is impossible. That of course is not the case. Allegations of future injury are sufficient for public-right standing if there is a "'substantial risk' that the harm will occur." <u>Clapper v. Amnesty Int'l USA</u>, 568 U.S. 398, 414 n.5 (2013); see <u>Sierra Club v. EPA</u>, 774 F.3d 383, 392 (7th Cir. 2014) (finding injury in fact based on increased probability of injury). "One does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough." <u>Pennsylvania v. West Virginia</u>, 262 U.S. 553, 593 (1923). The danger must be "realistic." <u>Babbitt v. United Farm Workers Nat'l Union</u>, 442 U.S. 289, 298 (1979). The Supreme Court has considered even "the threat of vote dilution

26

through the use of sampling" to be sufficient to establish standing. Department of Com. v. United States House of Representatives, 525 U.S. 316, 332 (1999); see Florida State Conf. of NAACP v. Browning, 522 F.3d 1153, 1162 (11th Cir. 2008) ("[W]e have repeatedly upheld plaintiffs' standing when the alleged injury was prospective and probabilistic in nature.").

One salient opinion, authored by Justice Antonin Scalia, is particularly illustrative of the nature of the injury-in-fact inquiry at the pleading stage. See Bennett v. Spear, 520 U.S. 154 (1997). In Bennett, ranch operators sued the government under the citizen-suit provision of the Endangered Species Act. The government appellee argued that the ranch operators failed to establish injury in fact because the ranch operators alleged that there would be a diminution in the aggregate amount of available irrigation water as a result of the government's actions but failed to establish that they themselves would receive less water. Id. at 167. The Court rejected this argument, explaining that, "'[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we "presum[e] that general allegations embrace those specific facts that are

27

necessary to support the claim."'" Id. at 168 (quoting Lujan, 504 U.S. at 561). Thus, an allegation of an adverse effect from the reduction of available water allowed the Court "to presume specific facts under which [the ranch operators would] be injured." Id. Just as in Bennett, the plaintiffs in this case have made general allegations at the pleading stage. But, although the alleged injuries are general, the plaintiffs do allege that, due to the defendants' actions, there is a substantial threat of election interference. Those "general allegations" are a sufficient basis for presuming, at this early stage of litigation, the facts necessary for injury in fact.

The main opinion, in rejecting the plaintiffs' standing argument because "the plaintiffs do not allege that any [of the alleged election fraud] actually occurred," __ So. 3d at __, fails to apply the foregoing long line of precedent regarding threatened injury as the basis for standing. The main opinion contends that the plaintiffs needed to claim that election fraud had already occurred in order to prevent it from occurring in the future. Similarly, the defendants argue that the plaintiffs needed to allege "that their ballots will likely be miscounted." Defendants' brief at 33. Neither view of the matter is accurate. All the plaintiffs were

28

required to show, to establish injury in fact, was a "'substantial risk' that the harm will occur." <u>Clapper</u>, 568 U.S. at 414 n.5. And at the pleading stage, the showing of substantial risk merely needed to be "general factual allegations of injury resulting from the defendant's conduct." <u>Lujan</u>, 504 U.S. at 561.

The complaint's allegations in this case sufficiently showed a substantial risk of future injury. The plaintiffs alleged that Alabama's voting machines "are susceptible to manipulation through internal or external intrusion." Likewise, the plaintiffs alleged that the machines "are potentially unsecure, lack adequate audit capacity, fail to meet minimum statutory requirements, and deprive voters of the right to have their votes counted and reported in an accurate, auditable, legal, transparent process." Their ultimate claim was that these machines "are vulnerable to cyber-attacks before, during, and after an election." The main opinion rightly highlights that these sorts of allegations are not allegations of particular harm to the plaintiffs, the sort of harm that needs to be ultimately proved for standing. But at the pleading stage, that particular, individual harm did not need to be proved. As <u>Lujan</u>, which the main opinion takes pains to defend, made very clear, at the

pleading stage, "general factual allegations of injury" suffice to establish standing. 504 U.S. at 561.

The standing inquiry has two other elements, both of which are raised here. The defendants challenge traceability, arguing that the plaintiffs cannot demonstrate "a 'causal connection' between [their] injury and the challenged action of the defendant." Lewis v. Governor of Alabama, 944 F.3d 1287, 1296 (11th Cir. 2019). Specifically, the Alabama Electronic Voting Committee ("the committee") argues that it does not decide whether any particular electronic vote-counting systems will be used in any particular election and that, under Alabama law, that decision is made exclusively by the counties. See § 17-7-21(a), Ala. Code 1975 ("The governing body of any county … may authorize, adopt, and direct the use of electronic vote counting systems …."). It is certainly true that counties bear the authority to determine which voting system will be used. But, as the statute goes on to specify, the committee has the duty to examine and certify the electronic-voting equipment. § 17-7-23. It also has the authority to "suspend all sales of the equipment or system in the state until such equipment or system complies with [statutory] requirements." § 17-7-23(5). Any voting system not certified by the

30

committee "shall not be adopted or used at any election." § 17-7-23(4). Thus, the committee's arguments that the alleged injury is not traceable to it is misguided; it certified the system at issue for use in Alabama, and there is thus a "causal connection" between its actions and the alleged harm.

In addition to injury in fact and traceability, a plaintiff must show a likelihood " 'that the [alleged] injury will be "redressed by a favorable decision." ' " Ex parte Alabama Educ. Television Comm'n, 151 So. 3d 283, 287 (Ala. 2013) (quoting Lujan, 504 U.S. at 561). One situation where redressability is found to be lacking is where "the relief require[s] action by a party not before the Court." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 106 n.7 (1998). In their reply brief, the plaintiffs assert that they did seek relief that the defendants could provide: compliance with the statutory certification requirements of § 17-7-21. This assertion is belied by their complaint. Although the plaintiffs did allege that the defendants violated their statutory duties, the relief they sought for the alleged violation was not decertification of particular systems; it was to "enjoin Defendants' use of electronic voting systems," order the "Defendants to halt the use of electronic voting systems in the 2022

31

Election," order the "Defendants to prevent electronic voting systems from being used in the 2022 Election," and enter an order requiring "the Defendants to conduct the 2022 election by hand count."

This relief is essentially of two kinds: First, the plaintiffs sought an order requiring the defendants to conduct the election via hand count. In order to achieve that relief, they sought an order that would require the committee to "prevent electronic voting systems from being used."

The ultimate relief the plaintiffs want -- statewide hand counts -- is not available from the committee. The committee has no control over the local officials who could provide the plaintiffs with that relief. No statute or other law vests the committee with authority to order hand counting in each county; it is simply not the right defendant for this kind of relief. It is the county commissioners of the 67 counties across Alabama who make decisions about how voting will be conducted in their counties under § 17-7-21(a) and who would be able to order hand counting; it is they who would have been the proper defendants for a suit seeking such relief.

As to the desired outcome of banning all ballot-counting machines, the committee does have the authority to certify or decertify particular

32

systems. But it lacks any ability to engage in the wide and sweeping relief the plaintiffs seek, banning all ballot-counting machines. Here, the plaintiffs disagree with the judgment of our State's legislators, expressed in statutes like § 17-7-21, that electronic ballot-counting is a secure method of counting votes. But the committee has no authority to countervene that legislative judgment; no statute would give it any authority to "halt the use of electronic voting systems." As Justice Cook highlights in his special concurrence, the primary forum for such statutory reform is not this Court, but the Legislature. The committee lacks the ability, in other words, to provide even this desired relief; no statute gives it the authority to overrule the Legislature's judgment and ban all ballot-counting machines. For this relief, the plaintiffs would have needed to challenge the electronic-ballot-counting-machine statute as unconstitutional. Although the Alabama Secretary of State is a defendant in this action, the complaint never alleges that that statute is unconstitutional. Although the plaintiffs would have had a heavy burden in such a challenge, the standing analysis in such a case would have

33

looked very different.[6]

I note a matter of concern in this case. The plaintiffs have presented serious assertions regarding the voting process, including an assertion that the Secretary of State purchased election-management-system laptop computers for each of Alabama's probate offices and that the purchase order required that these computers have Internet and wireless Bluetooth connection capabilities. According to the plaintiffs, these laptops were part of the voting system yet were never presented to the committee for inspection and certification. These assertions, if true,

---

[6]I recognize that this analysis of redressability may appear similar to an analysis of whether the plaintiffs have successfully stated a claim. Some have argued that there is no fundamental distinction between redressability as a cause-of-action issue and redressability as a standing issue. See Steel, 523 U.S. at 119 n.9 (Stevens, J., concurring in judgment). Justice Scalia argued for a different view, explaining that there is a "fundamental distinction" between the cause-of-action question, which is "whether a cause of action existed," and the redressability question. Id. at 96 (opinion of Court). Justice Murdock likewise highlighted the critical distinction between standing and other inquiries, such as who is the "real party in interest." Ex parte McKinney, 87 So. 3d 502, 512 (Ala. 2011) (Murdock, J., dissenting). At least in this particular case, the redressability issue is part of the question of standing. A real-party-in-interest issue examines whether a plaintiff is the right party to bring the suit, and a cause-of-action issue examines whether a plaintiff alleges a cognizable cause of action. But here, the plaintiffs are proper parties, and their cause of action is potentially cognizable; the problem is not that the wrong plaintiffs sued, but that they sued the wrong defendants, defendants who could not provide the relief sought. That goes to standing.

would present serious concerns regarding the defendants' duties to properly certify voting machines under § 17-7-23. However, the purchase of the laptops was raised for the first time at the preliminary-injunction hearing below. The issue is not raised anywhere in the complaint. (Nor did the plaintiffs move to amend their complaint to include these allegations.) Thus, even if this Court were to determine that the plaintiffs had standing, the laptops issue would not have been preserved in order for our Court to be able to address it. See <u>Wiggins v. City of Evergreen</u>, 295 So. 3d 43, 48-49 (Ala. 2019). The plaintiffs cannot argue that their complaint should not have been dismissed because of claims that were not in that complaint. Although this laptops issue is not truly before us, the plaintiffs' assertions are significant and would merit serious attention in the proper forum.

This Court's affirmance of the dismissal of the plaintiffs' complaint should by no means be read as an indication that challenges to election practices, including the use of ballot-counting machines, are nonjusticiable. The ground for the dismissal lies not in the political nature of elections, but in the more straightforward conclusion that this particular complaint failed to satisfy the requirements for standing.

35

Moreover, even while this Court affirms the circuit court's dismissal of the plaintiffs' claims, I encourage the executive branch to continue to take seriously its responsibility to faithfully enforce and apply the laws. In particular, the committee and the Secretary of State have a serious responsibility to maintain the fidelity of elections. The fact that a particular plaintiff may not satisfy the requirements of standing when it sues a government actor does not render the people without a remedy. The primary responsibility for investigating any allegation of governmental wrongdoing lies first not in private citizens, but in the executive branch, charged with the proper enforcement of the law. And ultimately, it is the people who hold all government actors accountable for their conduct, both through properly framed litigation and through the political process. An "election case concerns a principle at the very heart of the democratic process -- the integrity of elections." Taylor v. Cox, 710 So. 2d 406, 408 (Ala. 1998) (See, J., concurring specially). "Confidence in the integrity of our electoral process is essential to the functioning of our participatory democracy." Purcell v. Gonzalez, 549 U.S. 1, 4 (2006). This principle merits the most careful protection, in as many forums as are necessary.